# 13-4478-cv(L)

## 13-4481-cv(CON)

IN THE

# United States Court of Appeals

### FOR THE SECOND CIRCUIT

◆◆

ERIC GLATT, on behalf of himself and all others similarly situated, ALEXANDER FOOTMAN, on behalf of himself and all others similarly situated, EDEN M. ANTALIK, DAVID B. STEVENSON, KANENE GRATTS, on behalf of themselves and all others similarly situated, BRIAN NICHOLS,

*Plaintiffs-Appellees,*

—against—

FOX SEARCHLIGHT PICTURES INC., FOX ENTERTAINMENT GROUP, INC.,

*Defendants-Appellants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR PLAINTIFFS-APPELLEES

RACHEL BIEN
ADAM T. KLEIN
JUNO TURNER
OUTTEN & GOLDEN LLP
3 Park Avenue, 29th Floor
New York, New York 10016
(212) 245-1000

*Attorneys for Plaintiffs-Appellees*

# **TABLE OF CONTENTS**

INTRODUCTION ....................................................................................1

COUNTER-STATEMENT OF THE ISSUES ........................................2

STATEMENT OF THE CASE................................................................3

    I.      Summary Judgment....................................................................4

    II.     Class and Collective Certification...........................................6

SUMMARY OF THE ARGUMENT ......................................................6

    I.      The Court Should Affirm the District Court's Grant of Summary Judgment to Plaintiffs.............................................................6

          A.     The District Court Adopted the Correct Legal Standard...........6

          B.     The District Court Applied the Law Correctly ..........................7

    II.     The Court Should Affirm the District Court's Grant of Class and Collective Certification .......................................................7

STATEMENT OF FACTS .....................................................................9

    I.      The *Black Swan* Plaintiffs ..................................................9

          A.     Eric Glatt ...............................................................................9

          B.     Alexander Footman................................................................10

    II.     Antalik and the Certified Class and Collective ...................11

          A.     Two Intern Recruiters Oversaw Fox's Internship Program and Implemented Uniform Internship Policies........................11

          B.     Fox Used Unpaid Interns to Replace Paid Workers, Reduce Employee Workloads, and Cut Costs .......................................12

C.     Antalik and Class and Collective Members Regularly Performed Productive Work for Fox's Operations ...................13

D.     Fox Changed Its Unpaid Internship Program to a Paid Program Because of the Risk that It Was Not Compliant ........13

ARGUMENT ...................................................................................15

I.     The Test Fox Proposes Would Impermissibly Narrow the FLSA's Broad Definition of "Employee" and Would Thwart the Act's Remedial Goals ...................................................................15

A.     *Portland Terminal*'s Exception for "Trainees" Is Narrow and Does Not Apply to Plaintiffs ......................................16

1.     Under *Portland Terminal*, an Employer Must Show that It Received "No Immediate Advantage" from the Trainees' Work ...............................................18

2.     *Portland Terminal* Did Not Endorse a Primary Beneficiary Test ...............................................21

3.     The Court Should Not Follow the Sixth Circuit's *Laurelbrook* Decision ...............................................22

B.     This Court Has Not Adopted Fox's Primary Beneficiary Test ...............................................23

C.     The Primary Beneficiary Test Is Unmanageable ......................24

II.     This Court Should Adopt the DOL's Six Criteria for Unpaid Internships ...................................................................26

A.     The DOL Test Incorporates the Criteria that Were Essential to the Supreme Court's Decision in *Portland Terminal* ...........26

1.     Requiring Each Criterion to Be Met Is More Consistent with the FLSA's Broad Coverage than a Balancing Test ...............................................28

ii

2.      The DOL Test Invites Courts to Consider Additional Circumstances Relevant to Employee Status ................29

B.      The DOL's Experience and Consistent Approach in Trainee and Intern Cases Warrant Deference to Its Intern Test.............30

III.    The Court Should Affirm the District Court's Grant of Summary Judgment Because the Undisputed Evidence Establishes that Plaintiffs Were Employees.................................................................32

A.      Plaintiffs Were Employees, Not Trainees, Under *Portland Terminal* ..................................................................................32

B.      Fox Cannot Meet Four of the Six DOL Criteria as a Matter of Law...........................................................................34

1.      Plaintiffs Did Not Receive Training Similar to Training Provided in an Educational Environment......................34

2.      Fox Did Not Design Plaintiffs' Internships to Benefit Them ..............................................................................37

3.      Plaintiffs Displaced Regular Employees and Were Supervised Like Regular Employees.............................39

a.      Plaintiffs Displaced Regular Employees............. 39

b.      Plaintiffs Received the Same or Less Supervision than Regular Employees...................................... 40

4.      Plaintiffs' Work Provided an Immediate Advantage to Fox and Did Not Impede its Operations........................41

C.      The DOL Criteria Decidedly Weigh in Plaintiffs' Favor .........41

D.      Under Fox's Primary Beneficiary Test, Fox Benefitted More than Plaintiffs ..........................................................................42

iii

IV.   The District Court Acted Well Within Its Discretion in Certifying the Rule 23 Class. ................................................................43

    A.    Fox's Challenges Are Subject to Deferential Standards of Review. ....................................................................43

    B.    The District Court Acted Within Its Discretion in Finding that Plaintiffs Satisfied Rule 23(a)(2) ........................................44

        1.    Fox Has Failed to Show that the District Court's Factual Findings Were Clearly Erroneous ....................47

            a.    Fox Failed to Rebut Substantial Evidence that It Used Interns to Fill Gaps Caused by Cost-Cutting Measures ..........................................47

            b.    Fox Failed to Rebut Substantial Evidence that Its Employees Requested Interns to Relieve Their Workloads ..............................................48

            c.    Other Evidence that Fox Did Not Rebut Supports Commonality ..........................................49

        2.    Fox Has Failed to Show that the District Court's Commonality Finding Was an Abuse of Discretion ......50

        3.    This Case Is Not Like *Wal-Mart Stores, Inc. v. Dukes* ......................................51

    C.    The District Court Acted Within Its Discretion In Finding that Plaintiffs Satisfied Rule 23(b)(3) ........................................52

        1.    The Common Issues Are Key to the Merits Questions ........................................................52

        2.    The District Court Was Not Required to State its Rule 23(b)(3) Findings in Detail ...................53

        3.    Fox's Evidence Does Not Defeat Predominance ...........54

a. The Declaration that Fox Submitted Does Not Raise Issues that Predominate ..............................54

b. The Evidence Established that Fox's Internship Program Was Centrally Designed, Administered, and Overseen .......................................................55

c. Evidence that Interns Had Different Duties Does Not Defeat Predominance ...........................55

4. The District Court's Rule 23(b)(3) Finding Is Consistent with *Comcast Corp. v. Behrend*....................56

V. The District Court Acted Well Within Its Discretion in Conditionally Certifying the FLSA Collective ...................................58

A. The District Court Applied an Appropriate Standard to Certify the FLSA Collective .......................................................58

B. The Court Should Not Adopt Rule 23 as the Standard that Applies to Second Stage Certification Motions.......................60

CONCLUSION ...............................................................................62

CERTIFICATE OF COMPLIANCE......................................................63

# TABLE OF AUTHORITIES

PAGE(S)

CASES

*Alladin v. Paramount Mgmt., LLC*,
No. 12 Civ. 4309, 2013 WL 4526002 (S.D.N.Y. Aug. 27, 2013)...............33, 38

*Amgen v. Conn. Ret. Plans & Trust Funds*,
133 S. Ct. 1184 (2013)...............................................................................50, 53

*Anderson v. City of Bessemer City*,
470 U.S. 564 (1985)............................................................................44

*Archie v. Grand Central P'ship, Inc.*,
997 F. Supp. 504 (S.D.N.Y. 1998) .............................................*passim*

*Atkins v. Gen. Motors Corp.*,
701 F.2d 1124 (5th Cir. 1983) ...........................................................31

*Bailey v. Pilots' Ass'n for the Bay & River Del.*,
406 F. Supp. 1302 (E.D. Pa. 1976)....................................................20

*Barrentine v. Arkansas-Best Freight Sys., Inc.*,
450 U.S. 728 (1981)............................................................................41

*Blair v. Wills*,
420 F.3d 823 (8th Cir. 2005) .............................................................22

*Brooklyn Sav. Bank v. O'Neil*,
324 U.S. 697 (1945)............................................................................15

*Brown v. N.Y. City Dep't of Educ.*,
No. 13-139-cv, --- F.3d ----, 2014 WL 2749428
(2d Cir. June 18, 2014) ........................................................16, 25, 29

*Brown v. Wal-Mart Stores, Inc.*,
No. 09 Civ. 3339, 2012 WL 3672957 (N.D. Cal. Aug. 24, 2012) ....................54

*Comcast Corp. v. Behrend*,
133 S. Ct. 1426 (2013)...................................................................56, 57

vi

*Dejesus v. HF Mgmt. Servs., LLC*,
    726 F.3d 85 (2d Cir. 2013) ...............................................................................15

*Donovan v. Am. Airlines, Inc.*,
    686 F.2d 267 (5th Cir. 1982) ......................................................................19, 35

*Donovan v. New Floridian Hotel, Inc.*
    676 F.2d 468 (11th Cir. 1982) .........................................................................28

*Enea v. Bloomberg, L.P.*,
    No. 12 Civ. 4656, 2014 WL 1044027 (S.D.N.Y. Mar. 17, 2014) .....................57

*Espensheid v. Directsat USA, LLC*,
    705 F.3d 770 (7th Cir. 2013) ............................................................................61

*Friend v. Hertz Corp.*,
    No. 11-16195, 2014 WL 1016848 (9th Cir. Mar. 18, 2014) .............................54

*Genesis Healthcare Corp. v. Symczyk*,
    133 S. Ct. 1523 (2013)......................................................................................60

*Hoffman-LaRoche Inc. v. Sperling*,
    493 U.S. 165 (1989)..........................................................................................61

*Hoffmann v. Sbarro, Inc.*,
    982 F. Supp. 249 (S.D.N.Y. 1997) ...................................................................61

*In re IPO Sec. Litig.*,
    471 F.3d 24 (2d Cir. 2006) .........................................................................43, 44

*Kaplan v. Code Blue Billing & Coding, Inc.*,
    504 F. App'x 831 (11th Cir. 2013)....................................................................31

*Knepper v. Rite Aid Corp.*,
    675 F.3d 249 (3d Cir. 2012) ............................................................................60

*Kurgan v. Chiro One Wellness Ctrs., LLC*,
    No. 10 Civ. 1899, 2014 WL 642092 (N.D. Ill. Feb. 19, 2014) ........................57

*Leyva v. Medline Indus. Inc.*,
    716 F.3d 510 (9th Cir. 2013) ............................................................................57

*McLaughlin v. Ensley*,
877 F.2d 1207 (4th Cir. 1989) ....................................................................*passim*

*Marshall v. Baptist Hosp., Inc.*,
473 F. Supp. 465 (M.D. Tenn. 1979).....................................................39, 40, 41

*Martins v. 3PD, Inc.*,
No. 11 Civ. 11313, 2013 WL 1320454 (D. Mass. Mar. 28, 2013)....................58

*McKenna v. Champion Int'l Corp.*,
747 F.2d 1211 (8th Cir. 1984) ........................................................................61

*Megason v. Starjem Rest. Corp.*,
No. 12 Civ. 1299, 2014 WL 113711 (S.D.N.Y. Jan. 13, 2014) ........................58

*Myers v. Hertz Corp.*,
624 F.3d 537 (2d Cir. 2010) ......................................................................52, 58

*O'Brien v. Ed Donnelley Enters., Inc.*,
575 F.3d 567 (6th Cir. 2009) ...........................................................................60

*Okoro v. Pyramid 4 Aegis*,
No. 11 Civ. 267, 2012 WL 1410025 (E.D. Wis. Apr. 23, 2012)......20, 33, 34, 41

*Parra v. Bashas', Inc.*,
291 F.R.D. 360 (D. Ariz. 2013) .......................................................................57

*Petroski v. H&R Block Ents., LLC*,
750 F.3d 976, 2014 WL 1719660 (8th Cir. 2014) .................................19, 35, 37

*Reich v. Parker Fire Prot. Dist.*,
992 F.2d 1023 (10th Cir. 1993) ...............................................................*passim*

*Rosales v. El Rancho Farms*,
No. 09 Civ. 707, 2014 WL 321159 (E.D. Cal. Jan. 29, 2014) ..........................57

*Shahriar v. Smith & Wollensky Rest. Grp., Inc.*,
659 F.3d 234 (2d Cir. 2011) .......................................................43, 53, 55, 59

*Skidmore v. Swift & Co.*,
323 U.S. 134 (1944)..................................................................................26, 30, 31

*Solis v. Laurelbrook Sanitarium & School, Inc.*,
  642 F.3d 518 (6th Cir. 2011) ...........................................................22, 23, 39, 56

*Thiessen v. Gen. Elec. Capital Corp.*,
  267 F.3d 1095 (10th Cir. 2001) .........................................................................60

*Tony & Susan Alamo Found. v. Sec'y of Labor*,
  471 U.S. 290 (1985)...........................................................................32, 38, 41

*In re U.S. Foodservice Inc. Pricing Litig.*,
  729 F.3d 108 (2d Cir. 2013) ...............................................................................52

*Ulrich v. Alaska Airlines, Inc.*,
  No. 07 Civ. 1215, 2009 WL 364056 (W.D. Wash. Feb. 9, 2009)......................31

*United States v. Mead Corp.*,
  533 U.S. 218 (2001)............................................................................................30

*Velez v. Sanchez*,
  693 F.3d 308 (2d Cir. 2012) ........................................................................23, 24

*Wal-Mart Stores v. Dukes*,
  131 S. Ct. 2541 (2011).................................................................................50, 51

*Walling v. Portland Terminal Co*.,
  330 U.S. 148 (1947)...................................................................................*passim*

*Wirtz v. Wardlaw*,
  339 F.2d 785 (4th Cir. 1964) .............................................................19, 20, 42

*Zervos v. Verizon N.Y., Inc.*,
  252 F.3d 163 (2d Cir. 2001) .......................................................................44, 53, 58

## STATUTES

29 U.S.C. § 203 .....................................................................................................16

29 U.S.C. § 206(a) ................................................................................................57

29 U.S.C. § 216(b) ..........................................................................................60, 61

N.Y. Lab. Law § 651(5)........................................................................................16

**REGULATIONS**

29 C.F.R. § 520.300 ...................................................................28

29 C.F.R. § 520.408 ...................................................................29

29 C.F.R. § 778.107 ...................................................................57

29 C.F.R. § 778.223 ...................................................................16

**OPINION LETTERS**

U.S. Dep't of Labor Op. Letter, 1975 WL 40999 (Oct. 7, 1975) ............................31

U.S. Dep't of Labor Op. Letter, 1986 WL 1171074 (Jan. 17, 1986) ......................21

U.S. Dep't of Labor Op. Letter, 1994 WL 1004761 (Mar. 25, 1994) ..............20, 31

U.S. Dep't of Labor Op. Letter, 2004 WL 5303033 (May 17, 2004) ....................31

U.S. Dep't of Labor Op. Letter, No. FLSA2002-9,
    2002 WL 32406599 (Oct. 7, 2002) ...................................................................21

## **INTRODUCTION**

The Court should affirm the district court's order granting Plaintiffs' motion for summary judgment and certifying a class and collective of unpaid interns. The undisputed evidence establishes that Plaintiffs Eric Glatt and Alexander Footman were "employees" under the Fair Labor Standards Act ("FLSA") and not "trainees" under the narrow exception created by *Walling v. Portland Terminal Co.*, 330 U.S. 148 (1947). Plaintiffs performed productive work on the film *Black Swan* that provided Fox Entertainment Group, Inc. and Fox Searchlight Pictures, Inc. (collectively "Fox") with an "immediate advantage" because it allowed Fox to hire fewer paid employees and expedited the film's operations. Plaintiffs did not receive academic training or other educational benefits, and were not part of an internship program designed to benefit them.

In ruling that Plaintiffs were employees and entitled to minimum wages, the district court appropriately construed the *Portland Terminal* trainee exception narrowly in accordance with binding U.S. Supreme Court precedent and persuasive U.S. Department of Labor ("DOL") guidance. The Court should reject the "primary beneficiary" test that Fox proposes because it would expand the trainee exception well beyond *Portland Terminal*'s facts and holding and exclude many entry-level workers from the FLSA's broad coverage. Even if the Court adopts

Fox's test, however, it should still affirm the judgment below because it is beyond question that the benefits of Plaintiffs' internships decidedly favored Fox.

The district court acted within its discretion in certifying a class and collective of unpaid interns who, like Plaintiff Eden Antalik, worked in Fox's corporate offices. Generalized proof, including a company-wide corporate memorandum from a Fox executive, showed that Fox had a policy of using unpaid interns to replace paid workers and reduce employees' workloads. The district court did not abuse its discretion in finding that this evidence, together with evidence that intern supervisors requested interns based on their own needs and to get through busy periods, was capable of generating common answers to the liability questions and that these questions predominated over any individual liability or damages issues. Fox concedes that, even under its preferred test, the ultimate merits determination should turn on evidence of the "objective characteristics" of Fox's internship "program." Fox Br. 35-36.

## COUNTER-STATEMENT OF THE ISSUES

1.    Whether the district court correctly held that Glatt and Footman were employees under the FLSA and New York Labor Law ("NYLL") where they performed work that provided Fox with an immediate advantage, displaced paid employees, and did not participate in a program designed to provide academic training.

2

2.      Whether the district court correctly held that the DOL's six criteria for unpaid internships, derived from *Portland Terminal*, are entitled to deference and apply to Plaintiffs' claims, and that Fox's "primary beneficiary" test is not supported by *Portland Terminal* and is unmanageable.

3.      Whether the district court acted within its discretion in finding that Antalik established commonality and predominance under Rule 23(a)(2) and (b)(3) of the Federal Rules of Civil Procedure, where there was generally applicable evidence of Fox's policy of using unpaid interns to replace paid workers.

4.      Whether the district court acted within its discretion in finding that Antalik is "similarly situated" to potential collective members based on generally applicable evidence and where it had already found that Antalik satisfied the more stringent requirements of Rule 23.

## STATEMENT OF THE CASE

Glatt and Footman were unpaid interns who worked on the Fox film *Black Swan*.  Antalik was an unpaid intern who worked in Fox's corporate offices in New York City.  Their work provided Fox with an immediate advantage because it reduced paid employees' workloads and eliminated the need to hire other employees.

On February 15, 2013, Glatt and Footman moved for partial summary judgment that they were Fox's "employees" under the FLSA and NYLL.  Dkt. No.

89.  Antalik moved for certification of a class and collective of unpaid interns who worked in Fox's corporate offices.  Special Appendix ("SPA") 27.  On June 11, 2013, the Honorable William H. Pauley III, District Court Judge for the Southern District of New York, granted their motions.[1]  SPA36.

## I.     Summary Judgment

The district court found that Glatt and Footman were employees and not trainees.  SPA26.  Undisputed evidence established that Plaintiffs "performed routine tasks that would otherwise have been performed by regular employees," and that Fox "obtained an immediate advantage from [Plaintiffs'] work."  SPA24-25.  Plaintiffs' internships were "a far cry from [the training program in *Portland Terminal*], where trainees impeded the regular business of the employer, worked only in their own interest, and provided no advantage to the employer."  SPA26.

The "benefits" that Plaintiffs received, including "resume listings, job references, and an understanding of how a production office works," were "incidental to working in the office like any other employee and were not the result of internships intentionally structured to benefit them."  SPA24.  Because they are benefits that "result from any work relationship, paid or unpaid," they "are not the academic or vocational training benefits" that *Portland Terminal* envisioned.  *Id.*

---

[1]     The district court also granted summary judgment to Glatt and Footman on the issue of whether Fox Searchlight Pictures, Inc. was their "employer" under the FLSA and NYLL.  SPA17, 36.  Fox did not appeal this ruling.

The district court adopted the DOL's six criteria for unpaid internships ("DOL Test"), which are set forth in U.S. Department of Labor Fact Sheet No. 71, Internship Programs Under the Fair Labor Standards Act (Apr. 10, 2010) ("Fact Sheet"), because it found that they "have support in [*Portland Terminal*]," and are entitled to deference. SPA22.

It held that Fox's primary beneficiary test "has little support" in *Portland Terminal* because "the Supreme Court did not weight the benefits to the trainees against those of the railroad, but relied on findings that the training program served only the trainees' interests and that the employer received 'no immediate advantage from any work done by the trainees.'" SPA21 (quoting *Portland Terminal*, 330 U.S. at 153).

The district court also found that the primary beneficiary test is "subjective and unpredictable" because "an employer could never know in advance whether it would be required to pay its interns." SPA22.

However, even under the primary beneficiary test, it held that Fox was the primary beneficiary of the relationship because it "received the benefits of [Plaintiffs'] unpaid work, which otherwise would have required paid employees." SPA24.

5

## II.     Class and Collective Certification

The district court found that Antalik satisfied all of the requirements for class certification under Rule 23 and the "heightened" post-discovery standard for collective certification under the FLSA.  SPA35.

Antalik satisfied commonality under Rule 23(a)(2) because evidence "capable of generating common answers to questions of liability" included evidence that: (1) "interns were recruited to help with busy periods;" (2) "they displaced paid employees;" and (3) "those who oversaw the internships did not believe they complied with applicable law."  SPA31.  This "generalized proof" of Fox's liability predominated over any individual issues, including damages.  SPA33.

Antalik also met the standard for FLSA certification because "the generalized proof that interns were victims of a common policy to replace paid workers" was more substantial than evidence of their "disparate factual and employment settings" and any individual defenses.  SPA35.

### SUMMARY OF THE ARGUMENT

## I.     The Court Should Affirm the District Court's Grant of Summary Judgment to Plaintiffs.

### A.     The District Court Adopted the Correct Legal Standard.

The district court appropriately interpreted the trainee exception narrowly and applied the factors that were critical in *Portland Terminal* and that are

enumerated in the DOL Test.  SPA19-26.  The district court properly rejected

Fox's primary beneficiary test because it is not supported by *Portland Terminal*, is

inconsistent with the FLSA's broad employee definition, and is unpredictable,

subjective, and hard to apply.  SPA21-22.

### B.     The District Court Applied the Law Correctly.

Fox failed to raise questions of fact sufficient to show that Plaintiffs were

not employees because they were trainees.  Undisputed evidence established that

Plaintiffs' work provided Fox with an immediate advantage by displacing paid

production staff and expediting the production office's operations; that Fox did not

provide the type of training envisioned by *Portland Terminal* and subsequent

cases; and that Plaintiffs received the same kinds of benefits as paid employees to

the extent they received any benefits at all.  SPA23-26.

The district court also properly found that, even under the primary

beneficiary test, Fox was the primary beneficiary of Plaintiffs' internships.

SPA24.

## II.    The Court Should Affirm the District Court's Grant of Class and Collective Certification.

The district court acted within its discretion in finding that Antalik met the

requirements for class and collective certification.

First, with respect to Rule 23(a)(2)'s commonality requirement, the district

court relied on generalized evidence that is capable of generating common answers

to critical merits questions, including whether Fox obtained an immediate advantage from interns and whether interns displaced paid employees. SPA29-31. This evidence included a company-wide corporate memorandum from a top Human Resources executive discussing Fox's use of unpaid interns to replace paid temporary workers and to reduce overtime; testimony and documentary evidence that intern supervisors requested interns to reduce their workloads; and testimony and documentary evidence that those who oversaw the internship program believed it was illegal because interns provided an immediate advantage to Fox. SPA30-31. Although Fox attempts to downplay the evidence, it fails to show that it was an abuse of discretion for the district court to rely on it or that the district court made any clearly erroneous findings with respect to what the evidence demonstrates.

Second, the district court acted within its discretion in finding that the liability questions that the generalized evidence would answer predominated over any individual liability or damages calculations under Rule 23(b)(3). SPA33-34. The district court considered Fox's evidence that interns worked in different employment settings, but concluded that it did not overcome the substantial, general evidence of Fox's liability. SPA35. Fox fails to show that this was an abuse of discretion.

Third, the district court appropriately applied a heightened standard to Antalik's collective certification motion and not the low standard that applies

8

before discovery is completed. SPA35. Fox fails to show that it was an abuse of discretion for the district court to rely on the evidence that satisfied Rule 23's even more stringent requirements to certify the collective under Section 216(b)'s "similarly situated" standard.

## STATEMENT OF FACTS

### I. The *Black Swan* Plaintiffs

#### A. Eric Glatt

Eric Glatt worked for Fox as an unpaid intern in the accounting department of *Black Swan* from December 2009 through February 2010, five days a week from 9 a.m. to 7 p.m. Appendix ("A") 137. Glatt's supervisor testified that if Glatt had not done the work he performed, a paid crew member would have worked more hours to do it, or a paid assistant would have been hired. A328.

Glatt's responsibilities included tracking and reconciling purchase orders, invoices, and petty cash; reviewing personnel files; creating spreadsheets; communicating with cast and crew regarding personnel files; making deliveries; and scanning, photocopying, filing, and emailing accounting documents. A150, 153-54, 157, 159, 214, 328, 341.

Glatt also worked in the post-production department two days a week from March 2010 through August 2010, usually from 11 a.m. to 6 or 7 p.m. A140, 155. He filed, photocopied, ran errands, and did other clerical work. A215, 310.

Glatt did not receive any formal training or education on *Black Swan*. A144, 164-65. He had a "work relationship" with his supervisor who gave him on-the-job instructions.[2] A150, 154.

### B. Alexander Footman

Alexander Footman worked for Fox as an unpaid intern in the *Black Swan* production office from October 2009 through February 2010, between 25 to 50 hours a week. A182. Footman performed much of the same work as the office's paid production assistant. A176, 180, 185. If Footman had not done the work, Fox would have had to hire someone else to do it. When Footman reduced his schedule from five to three days a week, *Black Swan* hired another part-time intern. A175, 200.

Footman's responsibilities included: setting up office furniture; arranging lodgings for cast and crew; compiling vendor lists; taking out the trash; taking lunch orders; answering phone calls; watermarking scripts; drafting daily call sheets; photocopying; making coffee; making deliveries; receiving packages and deliveries; admitting guests into the office; selling furniture and supplies at the

---

[2]    Fox cites no evidence supporting its erroneous statement that "[a]s an undergraduate, Glatt studied multimedia instructional design[.]" *See* Fox Br. 10. Fox's statement that Glatt applied for the *Black Swan* internship while employed at AIG is also incorrect. *Id.* The record reflects that Glatt had already left AIG and pursued other opportunities when he applied for the internship. *See* A1174-75.

production's end; internet research; and sending invitations.  A171, 174-75, 179,

182-83, 201-02, 208, 314, 317-19.

Footman did not receive any formal training or education.  A185-86, 195,

209-10.  His supervision was limited to instruction on his tasks.  A173, 186, 197,

199-200.  For example, Footman's supervisor explained how to watermark

documents, so the production could trace scripts that were "leaked."  A173, 186,

197, 199-200.

## II.  Antalik and the Certified Class and Collective

Eden Antalik and the members of the class and collective that the district

court certified worked in Fox's corporate offices in New York City and Los

Angeles.

### A.  Two Intern Recruiters Oversaw Fox's Internship Program and Implemented Uniform Internship Policies.

Fox's internship program was centrally administered by two Intern

Recruiters, Aimee Hoffman and Laura Wiggins (the "Intern Recruiters"),[3] who: (1)

obtained, reviewed, and approved "Intern Request Forms" from Fox employees

who needed interns; (2) screened applicants; (3) processed interns' new hire

paperwork; and (4) oversaw the intern program, including training intern

supervisors on Fox's policies.  A458, 460, 527-29, 566-770, 573, 579-80, 582-84,

1636-39.  The Intern Recruiters performed these duties for all of the Fox

---

[3]      A523-25, 534, 604-05, 782-83, 1636-39.

11

subsidiaries for which class members worked.  A523-24, 534, 560.

### B. Fox Used Unpaid Interns to Replace Paid Workers, Reduce Employee Workloads, and Cut Costs.

Fox used unpaid interns to fill operational gaps resulting from "cost containment initiatives," including a hiring freeze and limits on overtime.  A1510, 1686; Supplemental Appendix ("SA") 8.  In a memorandum discussing these initiatives, the Executive Vice President of Fox's Human Resources Department, Linda Johns, reported that Fox had eliminated paid internships and "significantly scaled back" temporary workers.  A1736; SA8.  She concluded that, "[a]s a result, the number of [unpaid] internships increased and the size of [Fox's] intern program more than doubled."  SA8.

Fox expected its interns to provide "[u]seful assistance on key projects and day-to-day operations," and believed that the tasks that interns performed benefitted its operations.  A473, 489, 507-09, 530, 1661-63.  Fox's practice was to hire interns based on its department's "needs" – the more projects a department had, the more interns Fox hired for that department.  A462.  When a department was not busy, Fox did not hire many interns for that department.  *Id.*  When a department was busy, more interns were requested.  A470; *see* A995, 1647; SA2.  This is because Fox's employees relied on interns to assist with their work.  A470, 514.

### C. Antalik and Class and Collective Members Regularly Performed Productive Work for Fox's Operations.

Fox expected its interns to be "immersed in . . . day-to-day operations[.]" A468. For example, Antalik worked in New York City with four other interns compiling press clippings, assisting at film screenings, running errands, doing mailings, and making travel arrangements. A669, 675, 677-78, 681-90, 694-96, 703-05. Opt-In Plaintiff Brian Nichols worked in Los Angeles with three to four other interns reviewing video footage of sports events to locate and notate highlights in a spreadsheet for Fox Sports broadcasts. A1004.

Fox's "Intern Request Forms," which list the tasks that interns performed, A540, demonstrate that class and collective members regularly performed productive work for Fox's benefit. This work included: (1) administrative work;[4] (2) general office work;[5] (3) maintaining and updating records;[6] and (4) compiling information.[7]

### D. Fox Changed Its Unpaid Internship Program to a Paid Program Because of the Risk that It Was Not Compliant.

Fox made a blanket change to its internship program – from an unpaid program to a paid program – around September 2010 in response to the DOL's

---

[4]    A470, 776, 931, 935, 964, 987; SA10.
[5]    A485, 758-59, 761-62, 764, 776, 925, 950, 967, 973, 979, 987, 1011, 1519, 1782.
[6]    A755-56, 761-62, 791, 793, 797, 931, 933, 935, 953, 956, 962, 970, 979, 984, 987, 990, 1779.
[7]    A755-56, 761-62, 791, 956, 970, 990, 992-93, 1647, 1776.

13

publication of the Fact Sheet.  A502, 778-80, 1522, 1732-33.  Prior to the change,

senior Human Resources employees at Fox expressed concern that the fourth DOL

criterion – which prohibits employers from deriving an "immediate advantage

from the activities of the intern" – "creat[ed] a lot more risk going forward."

A1522, 1732.  Fox's corporate representative on its internship policies admitted

that, before the program changed, interns' work "may have" provided value to

Fox.[8]  A1523.

      Intern supervisors also expressed concern about whether Fox's unpaid

program was legal.  For example, after reviewing the DOL Test, which Fox

circulated to intern supervisors in an effort to "tighten up its guidelines," A1650, a

supervisor noted that, "the 'suggested' guidelines and the former reality differ

quite drastically."  A766-68.  Another stated that the DOL criteria "indicate[] that

[interns'] duties and participation [at Fox] may change substantially."  A773-74.

Antalik's supervisor asked Hoffman, "Why would an office have an intern that

provides no immediate advantage from said intern's activities?"  A1645.  Another

intern supervisor told Hoffman that she did not believe that her department should

participate in the program until it became paid.  A785-86.

---

[8]    *See also* A489 (A: "Did the interns ever do work that provided immediate advantage?  I would say: Yes, that could have happened.  Q: Do you think what the interns did provided the company with value? A: I think in some cases, yes, they did contribute and add value.")

14

## **ARGUMENT**

**I.    The Test Fox Proposes Would Impermissibly Narrow the FLSA's Broad Definition of "Employee" and Would Thwart the Act's Remedial Goals.**

The Court should not adopt Fox's "primary beneficiary" test because it is contrary to the text and purpose of the FLSA and is inconsistent with the narrow holding in *Portland Terminal*.  Congress defined "employee" with "striking breadth" to extend the FLSA's protections to "many persons and working relationships" not previously protected by any labor law.  *Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 91 (2d Cir. 2013), *cert. denied*, 134 S. Ct. 918 (2014) (internal quotation marks and citation omitted).  Fox's test, however, would severely narrow the FLSA's protections by limiting them to workers who can show that their employers benefited more from the relationship than they did.  In practice, this would exclude vulnerable workers who lack skills or experience from FLSA coverage – the principal workers the FLSA was intended to protect.  *See Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945) (noting that the FLSA was enacted to prevent "certain segments of the population" who suffered from "unequal bargaining power as between employer and employee" from agreeing to "private contracts" that harmed their health and well-being and damaged the economy).

15

Under the FLSA, an "employee" is "any individual employed by an employer." 29 U.S.C. § 203(e)(1). An "employer" is "any person acting directly or indirectly in the interest of an employer in relation to an employee[.]" 29 U.S.C. § 203(d). To "employ" is "to suffer or permit to work."[9] 29 U.S.C. § 203(g). The FLSA covers all work that an employer "suffer[s] or permit[s]," whether beneficial or not, *even* "idle[]" time. 29 C.F.R. § 778.223.

As discussed below, Fox suffered and permitted Plaintiffs' work and failed to show that *Portland Terminal*'s trainee exception, which the Court must "narrowly construe[]" against Fox, applied to them. *See Brown v. N.Y. City Dep't of Educ.*, No. 13-139-cv, --- F.3d ----, 2014 WL 2749428, at *5 (2d Cir. June 18, 2014).

### A. *Portland Terminal*'s Exception for "Trainees" Is Narrow and Does Not Apply to Plaintiffs.

*Portland Terminal* established a narrow exception to the FLSA's broad coverage of employees for participants in a *bona fide* training program that does not apply to Plaintiffs. In *Portland Terminal*, railroads offered a weeklong training course to applicants seeking to become railroad brakemen. 330 U.S. at 149. The brakemen trainees learned by observing regular employees and then "gradually" did some "actual work under close scrutiny." *Id.* Their activities did not displace

---

[9]     The New York Labor Law's definition of employee is nearly identical to the FLSA's definition. *See* N.Y. Lab. Law § 651(5).

the regular employees, who "d[id] most of the work themselves" and were required to "stand immediately by to supervise whatever the trainees d[id]." *Id.* at 149-50. The brakemen trainees' work did not "expedite the company business," but instead sometimes "impede[d] and retard[ed]" it. *Id.* at 150. After completing the training successfully, some brakemen trainees were included on the company's list of potential brakemen and, if they were hired by the company, the company retroactively paid them for the training period. *Id.*

The Supreme Court explicitly relied on certain key facts as the basis for its holding that the trainees were not employees under the FLSA. First, the trainees did not provide any "'immediate advantage'" to the railroads. *Id.* at 153. Second, the company provided "the same kind of instruction" as a vocational school. *Id.* Third, the trainees worked "solely" for their own "personal purpose or pleasure" and thus were like students in school, except that they trained on an employer's premises. *Id.* at 152. Fourth, the trainees did not displace any regular employees and actually impeded their work. *Id.* at 149-50.

Acknowledging the concern that a decision in favor of the railroads might "open up a way for evasion of the law," *id.* at 153, the Supreme Court emphasized the narrow scope of its ruling. Critically, it noted that this was not a case where the "employer ha[d] evasively accepted the services of beginners" for less than the minimum wage. *Id.* Rather, "the unchallenged finding[]" that the railroads

17

"receive[d] *no* 'immediate advantage' from *any work* done by the trainees" was critical to the outcome. *Id.* (emphasis added).

On appeal, Fox ignores the factors that were critical to the Supreme Court's decision in *Portland Terminal* and wrongly contends that the Supreme Court adopted a primary beneficiary test.

### 1. Under *Portland Terminal*, an Employer Must Show that It Received "No Immediate Advantage" from the Trainees' Work.

Fox argues that the fact that the brakemen trainees did not provide an immediate advantage to the railroads was not critical to the Supreme Court's decision in *Portland Terminal*, and should therefore not be a decisive factor in this case. Fox's argument ignores explicit language in *Portland Terminal* and the holdings of many other courts.

In *Portland Terminal*, the Supreme Court could not have been clearer that the fact that the brakemen trainees provided "no immediate advantage" to the railroads was key to its decision: "Accepting the unchallenged findings here that the railroads receive no 'immediate advantage' from any work done by the trainees, we hold that they are not employees within the Act's meaning." 330 U.S. at 153.

Ignoring this language, Fox argues that, in fact, the brakemen trainees *did* provide an immediate advantage to the railroads by becoming part of a pool of

18

prospective employees. Fox Br. 31-32. Thus, Fox argues, the fact that Plaintiffs'
work provided it with an immediate advantage is not determinative of whether they
were Fox's employees. *Id.*

The Court should not adopt Fox's tortured analysis. The railroads did not
reap an *immediate* benefit from the pool of prospective brakemen because the
railroads would not benefit at all until the brakemen became employees and could
then use the training they received. *See Petroski v. H&R Block Ents., LLC*, 750
F.3d 976, 2014 WL 1719660, at *5 (8th Cir. 2014); *Donovan v. Am. Airlines, Inc.*,
686 F.2d 267, 271 (5th Cir. 1982). The fact that the railroads retroactively paid the
trainees who became their employees supports Plaintiffs' analysis. *Portland
Terminal*, 330 U.S. at 150.

If the railroads had obtained an *immediate* advantage from the brakemen
trainees, because they "expedit[ed] the company business," or "displac[ed] [the
work of] regular employees," the Supreme Court was clear that the brakemen
trainees would have been employees under the FLSA. *Id.* at 153.

Lower courts, when presented with evidence that an employer received a
direct benefit from a purported trainee's labor, have routinely held that the trainees
were employees who were entitled to minimum wages, and not like the brakemen
trainees in *Portland Terminal*. For example, in *Wirtz v. Wardlaw*, the Fourth
Circuit held that high school students who performed clerical tasks in an insurance

19

office were employees, not trainees, because their work furthered the company's
promotional activities.  339 F.2d 785, 786-88 (4th Cir. 1964).

Similarly, in *McLaughlin v. Ensley*, the Fourth Circuit held that prospective
drivers for a snack food distribution company were employees because they helped
current drivers perform their duties, including driving trucks, loading and
unloading trucks, stocking shelves, and doing paperwork.  877 F.2d 1207, 1209-10
(4th Cir. 1989).

In *Archie v. Grand Central Partnership, Inc.*, then-Judge Sotomayor held
that the plaintiffs' maintenance, outreach, food preparation, and clerical work for
the defendants' homeless outreach programs provided an immediate advantage
because this was the type of work for which the defendants' competitors paid the
minimum wage.  997 F. Supp. 504, 507, 533-35 (S.D.N.Y. 1998).[10]

The DOL has also concluded that, when individuals perform work that
provides a direct advantage, they are employees.  For example, the DOL opined
that interns who assisted in the daily operations of a youth hostel were employees
and not trainees.  U.S. Dep't of Labor Op. Letter, 1994 WL 1004761, at *2 (Mar.
25, 1994).  Similarly, the DOL advised a grocery store that students who

---

[10]     *See also Okoro v. Pyramid 4 Aegis*, No. 11 Civ. 267, 2012 WL 1410025, at
*10 (E.D. Wis. Apr. 23, 2012) (work "cleaning, picking up prescriptions,
appearing in court," and relaying payroll information "conferred an immediate
benefit to the company"); *Bailey v. Pilots' Ass'n for the Bay & River Del.*, 406 F.
Supp. 1302, 1305, 1307 (E.D. Pa. 1976) (apprentice river boat driver who
performed the duties of a regular crew member was an employee).

volunteered to bag groceries for charity were employees because their work
provided an economic benefit to the store and reduced the workloads of regular
employees. U.S. Dep't of Labor Op. Letter, No. FLSA2002-9, 2002 WL
32406599, at *3-4 (Oct. 7, 2002); *see also* U.S. Dep't of Labor Op. Letter, 1986
WL 1171074, at *2-3 (Jan. 17, 1986).

In this case, the district court's decision that Plaintiffs were employees fits
squarely within this line of cases, which faithfully follow *Portland Terminal*'s
holding. Like the plaintiffs in those cases, Fox does not dispute that Plaintiffs
performed work that provided a direct benefit by expediting Fox's operations and
eliminating the need to hire paid workers. SPA25.

## 2. *Portland Terminal* Did Not Endorse a Primary Beneficiary Test.

Nothing in *Portland Terminal* permits an employer not to pay a worker from
whom it obtains direct benefits, as long as the worker benefits more. The Supreme
Court did not "compare[] the incidental benefit received by the railroad with the
vocational benefits received by the workers," as Fox contends, Fox Br. 30, or
balance any benefits at all. *See* SPA21. The Supreme Court repeatedly
emphasized that the brakemen trainees were not employees because the railroads
did not receive *any* direct benefits from the trainees' work and that the trainees
derived *all* of the benefits from the training. *Portland Terminal*, 330 U.S. at 150-
53.

As Fox acknowledges, the Supreme Court made "repeated references" that the training was "'for [the trainees'] own advantage,'" and "'personal purpose or pleasure.'" Fox Br. 29 (quoting *Portland Terminal*, 330 U.S. at 152-53). *Portland Terminal* did not leave room for employers to benefit *at all* from productive work, and certainly did not invite courts to make FLSA coverage decisions by opining on who benefitted more from a work arrangement.

### 3. The Court Should Not Follow the Sixth Circuit's *Laurelbrook* Decision.

The Court should not follow *Solis v. Laurelbrook Sanitarium & School, Inc.*, 642 F.3d 518 (6th Cir. 2011), because the circumstances of that case are wholly unlike this case. *Laurelbrook* involved a vocational program that was run by a school in which students performed tasks as part of the program's curriculum. 642 F.3d at 520. The school assigned the tasks and supervised the students. *See id.* at 520-21.[11] The school maintained sufficient staff so that "if the students did not perform work . . . the staff members could continue to provide the same services [] without interruption." *Id.* at 531.

In contrast, here, Plaintiffs worked for a private employer, were not part of a vocational or educational program, were supervised by other employees (not a

---

[11] These circumstances also led the Eighth Circuit in *Blair v. Wills*, 420 F.3d 823 (8th Cir. 2005), to conclude that the students in that case were not employees of the school they attended. *Id.* at 829.

school), and performed tasks that displaced paid employees and directly advanced Fox's operations. SPA24-25.

In addition, in *Laurelbrook*, the Sixth Circuit incorrectly held that, under *Portland Terminal*, an employer can avoid paying the minimum wage if it can show that the benefits it received were less substantial than the benefits that the trainees received. 642 F.3d at 525-26. This standard is inconsistent with the Supreme Court's analysis in *Portland Terminal*, which asked whether the employer obtained *any* immediate advantage from the trainees – not whether the employer benefited *more* than the trainees. *See* 330 U.S. at 153. By allowing employers to accept direct benefits as long as the trainees benefit more, the *Laurelbrook* exception is much broader than the narrow *Portland Terminal* exception and would "open up a way for evasion of the law."[12] *Id.*

## B. This Court Has Not Adopted Fox's Primary Beneficiary Test.

Fox is wrong that this Court "approved" its primary beneficiary test in *Velez v. Sanchez*, 693 F.3d 308, 330 (2d Cir. 2012). *Velez* did not involve purported trainees, it mentions the primary beneficiary test only in *dicta*, and it did not adopt the test to answer the question at hand – whether the plaintiff was a domestic service worker or a household member. *Id.* at 325-26.

---

[12] The other cases that Fox cites on pages 34-35 of its brief do not provide any basis in *Portland Terminal* for applying a primary beneficiary test.

Instead, the Court adopted an objective, multi-factor test under which "the flow of benefits" is just one of six criteria. *Id.* at 326, 330-31. As discussed below, this test is consistent with the DOL's position that *one* of the relevant criteria for unpaid internships is "whether the internship is for the benefit of the intern." *See* Part II.A., *infra*. Under Fox's test, the flow of benefits is the *only* relevant criterion.

## C.   The Primary Beneficiary Test Is Unmanageable.

The Court should also reject Fox's primary beneficiary test because it is unpredictable, subjective, and virtually impossible to apply. The district court correctly noted that, under Fox's test, "an employer could never know in advance whether it would be required to pay its interns" because it would not know until after the internship ended whether the intern was the primary beneficiary of the relationship. SPA22.

Fox argues that its primary beneficiary test is not unpredictable because "nothing turns on the intern's opinion" and it "revolves around the objective characteristics of the program itself." Fox Br. 35-36. However, Fox urges the Court *not to* adopt any specific criteria that employers must satisfy, which would still leave employers in the precarious position of having to predict whether the "primary beneficiary" scale tips in favor of employee or non-employee status. Instead, Fox suggests an array of amorphous concepts unmoored from the FLSA

and *Portland Terminal*. As this Court recently clarified, however, in determining employee status, "[w]hile [the] ultimate determination is based on the totality of the circumstances," the analysis must "focus[] on [the] discrete facts relevant to [the] particular statutory and regulatory criteria." *See Brown*, 2014 WL 2749428, at \*5. As discussed below, the DOL Test correctly identifies which discrete facts are relevant to the totality of the circumstances here.

The vague concepts that Fox suggests are not relevant to the "particular statutory and regulatory criteria" in this case and demonstrate how far Fox's test strays from *Portland Terminal*. For example, Fox argues that if interns learn "the values of task completion, leadership, and teamwork," this could tilt the scale against employee status. Fox Br. 36-37. Not only are these "benefits" of most paying jobs, they are so broad that any task an intern performs – even the most menial, like making a delivery or cleaning an office – could be characterized in a way that makes it sound like a "benefit."

Fox's position that its primary beneficiary test is "objective" is also an about-face from what it argued in the district court and what it argues elsewhere in this appeal with respect to the propriety of class certification.[13] In the district

---

[13] On pages 48-49 of its brief, Fox argues that the merits will depend on "the quality of any particular internship experience, the educational value to the intern, [and] who the primary beneficiary of the relationship was" – questions that it claims cannot be resolved on a classwide basis.

court, Fox "argued the very same internship position might be compensable as to one intern, who took little from the experience, and not compensable as to another, who learned a lot." SPA22; SA53-54. Fox also insisted that a court could not determine who the primary beneficiary of the relationship is on a group basis because the answer is too "individualized," and hinges on considerations unique to each intern, such as "how [the internship] worked within their education experience [and] their career aspirations." SA53-54.

## II. This Court Should Adopt the DOL's Six Criteria for Unpaid Internships.

The Court should adopt the DOL Test, A1339-40, because the criteria match the circumstances that were essential to the Supreme Court's decision in *Portland Terminal*, align with the FLSA's broad definition of "employee," and merit deference under *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944).

### A. The DOL Test Incorporates the Criteria that Were Essential to the Supreme Court's Decision in *Portland Terminal*.

The Court should adopt all of the DOL criteria because the Supreme Court relied on each of them to find that the trainees were not employees in *Portland Terminal*. Under the DOL Test, "internships in the 'for-profit' private sector will most often be viewed as employment" because of the FLSA's "broad" definition of "employ," unless the following six criteria are met:

26

(1)     The internship, even though it includes actual operation of the facilities of the employer, is similar to training which would be given in an educational environment;

(2)     The internship experience is for the benefit of the intern;

(3)     The intern does not displace regular employees, but works under close supervision of existing staff;

(4)     The employer that provides the training derives no immediate advantage from the activities of the intern; and on occasion its operations may actually be impeded;

(5)     The intern is not necessarily entitled to a job at the conclusion of the internship; and

(6)     The employer and the intern understand that the intern is not entitled to wages for the time spent in the internship.

A1339.

The DOL Test criteria match the criteria that the Supreme Court relied on in *Portland Terminal*: the railroads offered the same training as a vocational school, 330 U.S. at 152-53; the trainees worked "solely" for their own "personal purpose or pleasure," *id.* at 152; the trainees did not displace regular employees, who closely supervised them and did most of the work themselves, *id.* at 149-50; the trainees "impede[d]," and did not "expedite the company business," and provided the railroads with "no 'immediate advantage,'" *id.* at 150, 153; the trainees were not necessarily hired after completing the program, *id.* at 150; and the trainees did not expect to be compensated for the training, *id.*

27

Nothing in *Portland Terminal* supports Fox's argument that an employer can avoid paying its interns as long as it meets *some* of the DOL criteria.  *See* Fox Br. 37.  To the contrary, in *Portland Terminal*, the Supreme Court emphasized that it was the lower court's "findings" that assured it that there had not been a violation of "the letter or the spirit" of the FLSA and that the case would not "open up a way for evasion of the law."  330 U.S. at 153.

### 1. Requiring Each Criterion to Be Met Is More Consistent with the FLSA's Broad Coverage than a Balancing Test.

The DOL was correct to fashion a test that allows an employer to take advantage of a minimum wage exception only where the employer can match each significant fact in the Supreme Court case that created the exception.  Its approach is consistent with the FLSA's expansive coverage of employees and ensures that exceptions will be made only in circumstances like those in *Portland Terminal*.

Although Fox concedes that each DOL criterion is "relevant," it argues that employers should not be required to meet all of them.  Fox Br. 37.  For example, under Fox's approach, an employer would be able to deny wages to an intern who produces productive work (A1339 (Factor 4)), if the work experience is very beneficial to the intern (A1339 (Factor 2)).  This has never been a test for FLSA coverage.  *See Donovan v. New Floridian Hotel, Inc.*, 676 F.2d 468, 471 n.3 (11th Cir. 1982) (plaintiffs were employees even though they performed their tasks so poorly that it produced little value); *cf.* 29 C.F.R. § 520.300 (authorizing payment

28

of a reduced minimum wage to "learner[s]" whose work "produces little or nothing of value"); 29 C.F.R. § 520.408.

Fox's approach could also allow employers to deny coverage not just to interns, but to all workers who, because of their lack of skill or experience, their economic vulnerability, or other circumstances, may benefit more from their work than their employer gains from their labor. The Supreme Court specifically cautioned against this result in *Portland Terminal*. 330 U.S. at 153.

### 2. The DOL Test Invites Courts to Consider Additional Circumstances Relevant to Employee Status.

The DOL Test does not preclude courts from considering circumstances beyond the six criteria. Rather, it establishes the minimum requirements that an employer must meet to maintain an unpaid internship program. The introductory language in the Fact Sheet makes clear that, subject to the presumption that interns at for-profit companies must be paid, courts may consider "all of the facts and circumstances of each [internship] program" in determining whether an employer has met its burden. A1339.

Thus, consistent with the DOL Test, this Court could adopt all six criteria and be open to considering additional criteria if it concludes that they are also relevant to the economic reality of an intern's employee status. *See Brown*, 2014 WL 2749428, at *10-11 (analyzing the economic reality within the framework of specific regulatory criteria).

29

**B.      The DOL's Experience and Consistent Approach in Trainee and Intern Cases Warrant Deference to Its Intern Test.**

The DOL Test warrants deference because it "constitute[s] a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Skidmore*, 323 U.S. at 140.  An agency's interpretation should be granted deference "given the specialized experience and broader investigations and information available to the agency, and given the value of uniformity in its administrative and judicial understandings of what a national law requires." *United States v. Mead Corp.*, 533 U.S. 218, 234 (2001) (internal quotation marks and citation omitted).  The DOL has such "specialized experience," *id.*, and applied it in promulgating the test at issue here.

The weight to be accorded to an agency's interpretation also depends on "the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade[.]" *Skidmore*, 323 U.S. at 140.  Applying this standard, the Court should afford the DOL Test substantial weight.  It includes all of the outcome determinative factors in *Portland Terminal*.  *See* A1339-40.  The DOL also thoroughly explained its reasoning for including each factor in the Fact Sheet. *Id.*

The DOL has applied its test in a consistent manner for decades. A version of the test, replacing the word "intern" for "trainee" and "internship" for "training period" "ha[s] appeared in Wage and Hour Administrator opinions since at least 1967." *Reich v. Parker Fire Prot. Dist.*, 992 F.2d 1023, 1026 (10th Cir. 1993). In Opinion Letters in 1975, 1994, and 2004, for example, the DOL relied on the test to evaluate the employment status of unpaid interns and required each factor to be met.[14] *See* U.S. Dep't of Labor Op. Letter, 2004 WL 5303033, at *2 (May 17, 2004); U.S. Dep't of Labor Op. Letter, 1994 WL 1004761, at *1-2 (Mar. 25, 1994); U.S. Dep't of Labor Op. Letter, 1975 WL 40999, at *1 (Oct. 7, 1975).

Courts evaluating unpaid intern and trainee cases have long relied on the DOL Test and found it to be persuasive. *See Kaplan v. Code Blue Billing & Coding, Inc.*, 504 F. App'x 831, 834-35 (11th Cir. 2013), *cert. denied*, 134 S. Ct. 618 (2013); *Atkins v. Gen. Motors Corp.*, 701 F.2d 1124, 1127-28 (5th Cir. 1983); *Ulrich v. Alaska Airlines, Inc.*, No. 07 Civ. 1215, 2009 WL 364056, at *3 (W.D. Wash. Feb. 9, 2009); *Archie*, 997 F. Supp. at 531-33. The fact that courts have

---

[14] Although the Tenth Circuit opined that the DOL had not been consistent in requiring all of the factors to be met, it did not cite any interpretations or opinions involving trainees in which the DOL had taken a different approach. *See Parker Fire*, 992 F.2d at 1025-26. Instead, it cited introductory language requiring all of the circumstances of the trainee's activities to be considered in assessing the six criteria. *See id.* at 1026-27. As discussed above, the test does not preclude courts from considering additional circumstances if they are relevant to the employer-employee relationship.

accorded the DOL Test deference supports its persuasive power under *Skidmore*.
*See* 323 U.S. at 139-40.

## III. The Court Should Affirm the District Court's Grant of Summary Judgment Because the Undisputed Evidence Establishes that Plaintiffs Were Employees.

The Court should affirm the district court's grant of summary judgment to Plaintiffs because Fox concedes that the DOL criteria are "relevant" to the analysis and has not challenged the district court's determination that four of the six criteria weigh in Plaintiffs' favor. Fox Br. 37, 40-44.

Even under Fox's primary beneficiary test, the benefits of Plaintiffs' internships decidedly flowed to Fox. The undisputed evidence shows that Plaintiffs performed productive work that displaced the work of regular employees and received minimal benefits in return.

### A. Plaintiffs Were Employees, Not Trainees, Under *Portland Terminal*.

Plaintiffs' internships were not similar to the seven or eight day training course in which the *Portland Terminal* trainees participated. 330 U.S. at 149-50. Plaintiffs worked full-day schedules for several months in the *Black Swan* production office. *See Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 300-301 (1985) ("volunteers" who worked for defendant's businesses for "long periods" were "a far cry from [the trainees] in *Portland Terminal*"); *Archie*, 997 F. Supp. at 507, 533.

32

Fox also did not provide "the same kind of instruction [as a vocational school] at a place and in a manner which would most greatly benefit" Plaintiffs. *Portland Terminal*, 330 U.S. at 153. Plaintiffs simply worked like the other paid employees on the production at the place and in the manner that Fox required. *See* A150, 153-54, 157, 159, 171, 174-75, 179, 182-83, 201-02, 208, 214, 314, 317-19, 328, 341. *See Alladin v. Paramount Mgmt., LLC*, No. 12 Civ. 4309, 2013 WL 4526002, at *3 (S.D.N.Y. Aug. 27, 2013) (intern was an employee where there was "no evidence . . . that [she] received training or education beyond any on-the-job training given to employees"); *Okoro*, 2012 WL 1410025, at *10 (doing work for the defendant's operations "was not akin to the 'course of practical training,' which the prospective yard brakemen in [*Portland Terminal*] received") (quoting *Portland Terminal*, 330 U.S. at 150); *Archie*, 997 F. Supp. at 507-08 (program structured around the defendants' operations in which the plaintiffs did work was not a training course under *Portland Terminal*).

Furthermore, unlike the railroad trainees in *Portland Terminal*, Plaintiffs' work expedited Fox's operations and did not impede them. *See* 330 U.S. at 149-50. Glatt filed, photocopied, ran errands, and maintained payroll records. A150, 153-54, 157, 159, 214-15, 309, 328, 341. Footman arranged lodging, took lunch orders, answered the phone, watermarked scripts, photocopied, and made deliveries. A171, 174-75, 179, 182-83, 201-02, 208, 314, 317-19.

33

Unlike the supervisors in *Portland Terminal*, Plaintiffs' supervisors did not do "most of the work [they assigned to Plaintiffs] themselves," or "stand immediately by to supervise whatever [Plaintiffs] d[id]."  330 U.S. at 150. Plaintiffs did the work they were assigned themselves.  A150, 153-54, 157, 159, 171, 174-75, 179, 182-83, 201-02, 208, 214, 314, 317-19, 328, 341.

Critically, in *Portland Terminal*, the railroad trainees provided "no 'immediate advantage'" to the railroads.  330 U.S. at 153.  Here, there is no dispute that Plaintiffs' work provided an immediate advantage to Fox.  A150, 153-54, 157, 159, 171, 174-75, 179, 182-83, 201-02, 208, 214, 314, 317-19, 328, 341.  *See Ensley*, 877 F.2d at 1210; *Okoro*, 2012 WL 1410025, at *10; *Archie*, 997 F. Supp. at 513-14, 533.  Plaintiffs' work did not "serve[] *only* [their] own interest." *Portland Terminal*, 330 U.S. at 152 (emphasis added).  It directly benefited Fox by eliminating work that Fox would have had to pay workers to do.  A154, 175-76, 180, 185, 200, 328.

### B.  Fox Cannot Meet Four of the Six DOL Criteria as a Matter of Law.

#### 1.  Plaintiffs Did Not Receive Training Similar to Training Provided in an Educational Environment.

Fox cannot satisfy the first DOL criterion because Plaintiffs did not receive training approximating the education they would receive in an educational environment.  *See* A1339; *Archie*, 997 F. Supp. at 531.  Fox admits that, to the

extent Plaintiffs received any training, it was by performing the "hands-on" work of the production office. Fox Br. 41. This kind of "training" is not sufficient under *Portland Terminal*.

Courts have consistently held that plaintiffs whose "training" involves doing work under the supervision of regular employees, or simply working for the defendant's operations, are employees and not trainees. In *Ensley*, the Fourth Circuit held that trainee salesmen who learned how to perform their duties by assisting paid employees were employees. 877 F.2d at 1210. In *Archie*, the court held that individuals who staffed the defendants' operations were employees because the defendants "structured a program that required the plaintiffs to do work that had a direct economic benefit[.]" 997 F. Supp. at 507.

By contrast, *bona fide* training programs generally involve classroom learning, shadowing, close supervision, and no productive work. For example, in *Petroski*, the training for prospective tax professionals involved "live and web-based courses" and did not "entail working on actual client tax returns or meeting with actual clients." 2014 WL 1719660, at *1.

In *American Airlines*, the training the airline provided took place at a "Learning Center," was "conducted in an academic environment and [wa]s virtually identical to the curriculum offered at vocational schools." 686 F.2d at 270. The trainees were "not productive for [the airline] until after their training

35

end[ed]" and they did not have contact with customers or replace or supplement the work of employees. *Id.* at 269-70, 272. Relying on these facts, the Fifth Circuit held that the trainees were not employees under *Portland Terminal*. *Id.* at 271-73.

In *Parker Fire*, the fire company's training "overlapped significantly" with what schools provided. 992 F.2d at 1027. The curriculum included "classroom lectures, tours of the district, demonstrations, physical training, and simulations." *Id.* at 1025. The prospective firefighters did not do any work, were not assigned to shifts, and did not maintain any equipment that was not training equipment. *Id.* at 1025, 1027-29.

In this case, Plaintiffs received no formal training and simply performed the work of production office employees with little supervision. A144, 154, 164-65, 176, 180-81, 185, 195, 209-10, 328. The district court correctly held that the fact that Plaintiffs gained skills "simply by being there, just as [their] paid co-workers did, and not because [their] internship[s] [were] engineered to be more educational than a paid position" is insufficient. SPA23; *see Parker Fire*, 992 F.2d at 1028 ("mere[]" supervision of "trainees as they carry out employees' duties" fails *Portland Terminal*).

Fox argues that *Portland Terminal* needs to be "translate[d] . . . into modern times," and that the Court should hold that learning acquired by doing work on-

the-job is sufficient.  Fox Br. 41-42.  However, substantial academic or vocational

training, like the training courses in *Portland Terminal*, *Petroski*, *American*

*Airlines*, and *Parker Fire*, must be a prerequisite to establishing that an individual

is a trainee because, without such a requirement, there would be no basis for the

Supreme Court's exception in *Portland Terminal* for "trainees."  *See Parker Fire*,

992 F.2d at 1027-28; *Ensley*, 877 F.2d at 1210.  The Supreme Court was aware of

the risk that employers could take advantage of the trainee exception by expanding

it beyond *bona fide* trainees and specifically warned against this in *Portland*

*Terminal*.  *See* 330 U.S. at 153.

### 2.    Fox Did Not Design Plaintiffs' Internships to Benefit Them.

Fox did not design Plaintiffs' internships to benefit them.  Any benefits that

Plaintiffs received, such as how to do their assignments, resumé filler, and an

understanding of how *Black Swan*'s production office functioned, were incidental,

and the same types of benefits paid employees obtain from working in any office.

When "interns are engaged in the operations of the employer or are performing

productive work (for example, filing, performing other clerical work, or assisting

customers) then the fact that they may be receiving some benefits in the form of a

new skill or improved work habits will not exclude them from the FLSA's

minimum wage and overtime requirements[.]"  A1340.

The district court correctly held that the types of benefits that Plaintiffs received "result from any work relationship, paid or unpaid, and are not the academic or vocational training benefits envisioned by [the second DOL] factor." SPA24; *see Archie*, 997 F. Supp. at 507, 533 (benefits like job skills and employment history gained through work that has a direct economic benefit for the defendants are insufficient).

Fox argues that *any* benefits of an internship – no matter if they are the same benefits of employment – weigh in favor of trainee status. However, when interns gain the same benefits as employees, this makes them *more* like employees and *less* like trainees. The DOL and courts have consistently held that benefits gained through productive work that any employee would receive do not qualify as benefits of a *bona fide* training program. *See* A1340; *Alladin*, 2013 WL 4526002, at *3; *Archie*, 997 F. Supp. at 507, 533. If they were, there would be no way to distinguish between employees and trainees. The fact that these benefits may be of value to interns (just as they are to employees), does not relieve employers of their obligation to pay interns wages for their work. *See Alamo*, 471 U.S. at 301-02 (although "volunteers" testified that their work was part of their "ministry," they were employees under the FLSA and entitled to be paid).

3.     **Plaintiffs Displaced Regular Employees and Were Supervised Like Regular Employees.**

a.     **Plaintiffs Displaced Regular Employees.**

It is undisputed that the tasks that Plaintiffs performed were integral to the operations of the production office and would have been done by Fox employees or other paid workers if Plaintiffs had not done them for free.  A137, 140, 150, 153-55, 157, 159, 171, 173-75, 179, 182-83, 186, 195, 197, 199-202, 208-10, 214-15, 309, 314, 317-19, 328, 341.

If an employer "would have hired additional employees or required existing staff to work additional hours had interns not performed the work, then the interns will be viewed as employees and entitled to compensation under the FLSA." A1340; *compare Ensley*, 877 F.2d at 1210 (salesmen in training who aided employer's regular employees while they performed their duties were employees), *Archie*, 997 F. Supp. at 533 (where program participants provided services that allowed defendants to avoid paying others at market rates, participants were employees, not trainees), and *Marshall v. Baptist Hosp., Inc.*, 473 F. Supp. 465, 473 (M.D. Tenn. 1979) (trainees who "became functioning members of the . . . department . . . displaced regular employees"), *rev'd on other grounds*, 668 F.2d 234 (6th Cir. 1981), *with Portland Terminal*, 330 U.S. at 152 (trainees did not displace regular employees "who d[id] most of the work themselves"), *Laurelbrook*, 642 F.3d at 531 (employer maintained sufficient staff so that "if the

39

students did not perform work . . . the staff members could continue to provide the same services [] without interruption"), *and Parker Fire*, 992 F.2d at 1029 (trainees "did not relieve any employed firefighter of his or her duties").

> **b.    Plaintiffs Received the Same or Less Supervision than Regular Employees.**

Plaintiffs did not work under "close supervision," *see* A1339, and there is no dispute that their supervisors did not "stand immediately by to supervise whatever [Plaintiffs] d[id]." *Portland Terminal*, 330 U.S. at 150. "[I]f the intern receives the same level of supervision as the employer's regular workforce, this would suggest an employment relationship, rather than training." A1340; *see Archie*, 997 F. Supp. at 516-17, 532 (plaintiffs did not receive "close supervision" where they were left to perform their tasks alone after receiving initial instruction); *Baptist Hosp.*, 473 F. Supp. at 472-74 (trainees who often worked unsupervised or were supervised by another trainee were "not closely supervised").

Fox argues that not all trainees require "someone standing over their shoulder to teach them appropriate technique," Fox Br. 43, however, as the DOL and courts have recognized, *some* level of supervision greater than what employees receive must be required or the distinction between employees and trainees would collapse. *See* A1340; *Parker Fire*, 992 F.2d at 1028 (the "mere[]" supervision of "trainees as they carry out employees' duties" is insufficient).

### 4. Plaintiffs' Work Provided an Immediate Advantage to Fox and Did Not Impede its Operations.

The DOL and courts have routinely held that productive work like the work that Plaintiffs performed provides an "immediate advantage."  A1340 (interns who perform "productive work (for example, filing, performing other clerical work, or assisting customers)" do work that "benefits" the employer); *see Ensley*, 877 F.2d at 1210; *Okoro*, 2012 WL 1410025, at *10; *Archie*, 997 F. Supp. at 513-14, 523-24, 535; *Baptist Hosp.*, 473 F. Supp. at 472-73.

### C. The DOL Criteria Decidedly Weigh in Plaintiffs' Favor.

Even if the Court determines that Fox is not required to meet each of the DOL Test criteria, it should still affirm the district court's grant of summary judgment to Plaintiffs because the first, second, third, and fourth criteria weigh in Plaintiffs' favor.

The Court should afford the last criterion – whether Plaintiffs understood they would not be paid – little weight.  The right to be paid under the FLSA cannot be waived, even knowingly, because it "would nullify the purposes of the statute and thwart the legislative policies it was designed to effectuate."  *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981) (internal quotation marks and citations omitted); *see also Alamo*, 471 U.S. at 302 ("[T]he purposes of the Act require that it be applied even to those who would decline its protections").

41

The district court appropriately held that the sixth criterion "adds little, because the FLSA does not allow employees to waive their entitlement to wages."  SPA25.

### D. Under Fox's Primary Beneficiary Test, Fox Benefitted More than Plaintiffs.

Even under Fox's primary beneficiary test, it was the primary beneficiary of the relationship.  The benefits that Plaintiffs received were outweighed by the productive work that Fox admits Plaintiffs regularly performed.  *See Ensley*, 877 F.2d at 1210 (plaintiffs who gained skills "specific to the job" and who provided "aid to [the defendant's] regular employees while they performed their normal duties" benefitted less than the defendant); *Wardlaw*, 339 F.2d at 787-88 (even if plaintiffs learned "enough [from their work] to enable them to determine whether they would be interested in" careers in the defendant's field, their work activities "served [the defendant's] interests" and did not fall under *Portland Terminal*'s trainee exception); *Archie*, 997 F. Supp. at 535 (the benefit of plaintiffs' productive work was greater than the basic job skills that the plaintiffs gained).

There is almost no evidence that Plaintiffs received any educational benefits from their internships.  Fox cites a few snippets of testimony that Glatt wanted to learn about film postproduction, *see* A1122, and that Footman "wanted to get experience on a Hollywood film" and learn what the different departments on a film do.  A1143-44.  However, these "benefits" cannot overcome the substantial

42

productive labor Plaintiffs provided to Fox for free. *See Wardlaw*, 339 F.2d at 787-88; *Archie*, 997 F. Supp. at 535.

There were not even practical benefits of Plaintiffs' internships. The evidence does not support Fox's claim that Plaintiffs "obtained behind-the-scenes access," "developed contacts," or "acquired skills or knowledge to give them a competitive edge in the job market." *See* Fox Br. 41. The testimony Fox cites merely shows that Plaintiffs hoped their internships would lead to jobs in film, A1153-54, 1161-62, 1165, 1173, but there is no evidence that they did. Even if Plaintiffs had obtained these benefits, they are the same benefits that paid employees on the production gained and not the benefits of an internship program designed to be educational.

## IV. The District Court Acted Well Within Its Discretion in Certifying the Rule 23 Class.

The Court should affirm the district court's certification of the Rule 23 class because the district court acted well within its discretion and followed the applicable legal standards.

### A. Fox's Challenges Are Subject to Deferential Standards of Review.

The Court should review the district court's certification decision under the abuse of discretion and clear error standards because Fox challenges the factual findings on which the district court made its Rule 23 rulings and not the legal standards that the district court applied. *See Shahriar v. Smith & Wollensky Rest.*

43

*Grp., Inc.*, 659 F.3d 234, 250-51 (2d Cir. 2011); *In re IPO Sec. Litig.*, 471 F.3d 24, 32 (2d Cir. 2006).

The findings on which the district court made its Rule 23 rulings are reviewed for clear error and must be upheld even if "there are two permissible views of the evidence." *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985) (citations omitted); *see also Zervos v. Verizon N.Y., Inc.*, 252 F.3d 163, 168 (2d Cir. 2001) ("clear error" standard is a "deferential standard of review grounded, *inter alia*, on the belief that district courts have a good deal of 'expertise' when it comes to fact-finding") (citing *Anderson*, 470 U.S. at 574).

The district court's determination that Plaintiffs established each Rule 23 requirement is reviewed for abuse of discretion. *In re IPO*, 471 F.3d at 32 (abuse of discretion applies to the "ultimate decision on class certification as well as . . . rulings as to Rule 23 requirements"). The standard is met where the decision "falls within a range of permissible decisions." *Zervos*, 252 F.3d at 169.

## B. The District Court Acted Within Its Discretion in Finding that Plaintiffs Satisfied Rule 23(a)(2).

The district court correctly found that Plaintiffs had identified common proof that was capable of answering: (1) whether interns displaced paid employees; and (2) whether interns provided Fox with an immediate advantage by helping relieve employee workloads. SPA29-30. These are critical merits questions under *Portland Terminal*, and are directly relevant to the second, third, and fourth DOL

44

Test criteria, and to whether Fox was the "primary beneficiary" of its internship program.

In finding that Plaintiffs satisfied Rule 23(a)(2), the district court rigorously evaluated the evidence. First, it reviewed testimony and documents showing that Fox departments "requested interns based on their 'needs,' and they requested more when they were busier, the opposite of what one would expect if interns impeded [Fox's] work." SPA30.

Second, it analyzed an internal memorandum written by Fox's Executive Vice President of Human Resources, in which she "reports that because paid internships were eliminated and overtime pay and temporary employees [were] scaled back, 'the size of [Fox's] [unpaid] intern program more than doubled.'" SPA30. The memorandum announces a new blanket policy (replacing the old blanket policy) that was to begin in Fall 2010, under which Fox would no longer approve its employees' requests for unpaid interns "unless [they] can comply with the six criteria" of the DOL Test.[15] SPA31. The memorandum provides substantial common proof of Fox's minimum wage violations because, as the district court noted, "[u]sing unpaid interns to fill the interstices created by eliminating paid positions is a clear violation of the NYLL." SPA30.

---

[15] Instead of instituting this policy, Fox changed its internship program to a paid program. A1726-28, 1732-33.

Third, the district court evaluated evidence that Fox's own employees, including those charged with enforcing Fox's intern policies, believed that Fox's intern program violated the law and would have to be changed. For example, a Fox Human Resources executive told intern supervisors in response to the DOL Fact Sheet that "the regulations have been changed significantly creating a lot more risk going forward." SPA31. Antalik's supervisor asked an Intern Recruiter, "'[w]hy would an office have an intern that provides no immediate advantage from said intern's activities?' She responded, 'That is the question! . . . If we give them work to benefit the company, we really should pay them . . . these DOL guidelines really make you think about whether it's worth it or not to have [an unpaid intern].'" *Id.* The Intern Recruiter also "informed internship supervisors that 'internships will be changing considerably,'" and "'we are tightening up our guidelines due to the department of labor's definition of a [sic] unpaid intern.'" *Id.*

Fox failed to rebut this evidence or show that it did not reflect a pattern or practice of using unpaid interns to cut costs, reduce employee workloads, and displace paid workers.[16]

---

[16]    Fox inaccurately claims that the class that the district court certified was "potentially sprawling." Fox Br. 20. This is a remarkable overstatement given that, in the district court, Fox argued that Plaintiffs had failed to satisfy the 40-person threshold to establish numerosity. *See* Dkt. No. 138 at 13-16. In fact, the class consists of approximately 82 individuals who worked at Fox's New York City corporate headquarters. *See* A441.

### 1. Fox Has Failed to Show that the District Court's Factual Findings Were Clearly Erroneous.

Before the district court, Fox failed to rebut the proof on which the district court relied to find that commonality was met. Contrary to Fox's claim on appeal, the proof was not marginal. It reflects policy decisions made at Fox's highest levels by the senior Human Resources executives who created and enforced Fox's intern policies. This type of objective common evidence, even under Fox's preferred test, is relevant to evaluating the "characteristics" of Fox's internship "program" as a whole. Fox Br. 35-36.

### a. Fox Failed to Rebut Substantial Evidence that It Used Interns to Fill Gaps Caused by Cost-Cutting Measures.

The district court's finding that Fox's internal memorandum reflects a policy of using interns to fill gaps caused by eliminating paid positions is not clearly erroneous. *See* SPA31. The memorandum describes how Fox ordered a hiring freeze and cut overtime, while simultaneously eliminating paid internships and "significantly scal[ing] back" the use of temporary workers. A1510, 1686, 1722-23; SA8. The memorandum concludes that, as a result of those measures, "the number of [unpaid] internships increased and the size of [Fox's] intern program more than doubled." SA8.

Fox does not point to any evidence rebutting the memorandum, and Fox's attempts to downplay its significance fail. *See* Fox Br. 48. The memorandum is

47

not *just* "a single piece of correspondence between two individuals," *id.*, it is a high-level policy document drafted by an executive in Fox's Human Resources department that was sent to other corporate executives at Fox. A541, 1488, 1684; SA7. Moreover, the memorandum provides sufficient "glue" for Plaintiffs' allegation that Fox engaged in a pattern of violating the law because it acknowledges the widespread use of interns to reduce the work of paid employees. *See* Fox Br. 49 (quoting *Wal-Mart Stores v. Dukes*, 131 S.Ct. 2541, 2552 (2011)).

### b. Fox Failed to Rebut Substantial Evidence that Its Employees Requested Interns to Relieve Their Workloads.

The district court's finding that Fox employees "requested interns based on their 'needs,' and . . . requested more when they were busier," is not clearly erroneous. SPA30. Ample unrebutted evidence supports this finding.

First, Aimee Hoffman, an Intern Recruiter, testified that intern supervisors typically requested interns based on their needs, and that the more projects they had, the more interns Fox hired. A462. Emails from intern supervisors confirm this. *See* A995, 1647; SA2-5.

Second, Hoffman admitted that one "purpose" of Fox's internship program was for interns to provide "assistance on key projects and day-to-day assignments." A473. "Intern Request Forms" that Fox employees submitted to

obtain interns show that intern supervisors routinely requested interns to provide such assistance.[17]  *See* A931, 935, 950, 953, 962-64, 967, 970-76, 979, 984, 987, 990-93.

Fox failed to rebut this evidence or show that it reflects anything other than a common, deliberate practice of recruiting interns based on Fox's needs.  There is no support for Fox's claim that Hoffman played a minor role in overseeing its intern program.  Hoffman testified that she was integral to the program, including by recruiting interns, reviewing intern supervisors' requests for interns to ensure they complied with Fox's policies, training intern supervisors, ensuring that interns completed required forms, and following up with interns regularly throughout their internships.  A458, 460, 523-24, 527-29, 534.

### c.    Other Evidence that Fox Did Not Rebut Supports Commonality.

Evidence "that those who oversaw [Fox's] internships did not believe they complied with applicable law" also supports commonality.  For example, documents show that Fox's Senior Vice President of Human Resources and its Intern Recruiter doubted whether Fox could satisfy the fourth DOL criterion prohibiting employers from obtaining an "immediate advantage."  A1522-23,

---

[17]    Although the district court did not rely on this evidence because it believed that the completed forms were "individualized," SPA30, the forms are probative because they show that intern supervisors requested interns to perform the types of tasks that directly benefited Fox.  *See infra* Part IV.C.3.c.

49

1732-33; *see also* A489, 766-68, 773-74, 785-86, 1645, 1650.

These documents do not merely reflect "the subjective beliefs of certain employees at Fox," as Fox argues.  Fox Br. 48.  They reflect the conclusions of the employees charged with creating and enforcing Fox's intern policies, whom Fox designated as its corporate witnesses to speak for the company.  A466, 1482-83, 1505.  In any case, their "beliefs" are directly relevant to whether Fox created and enforced an intern policy that complied with the law, and the district court was correct in relying on them.

> ### 2. Fox Has Failed to Show that the District Court's Commonality Finding Was an Abuse of Discretion.

The district court acted within its discretion in finding that the common evidence discussed above was capable of answering key merits questions, including whether interns displaced regular employees and whether Fox derived an immediate advantage from interns' labor.

Fox argues that the evidence will not answer any merits questions, but this is simply not true.  The evidence is central to the issues the Supreme Court identified in *Portland Terminal*, directly relevant to the second, third, and fourth DOL criteria, and would undoubtedly count as "benefits" to Fox under its primary beneficiary test.  Even if the evidence will not answer *all* of the merits questions, this is not a requirement for commonality, *see Wal-Mart*, 131 S. Ct. at 2556, or even for predominance.  *Amgen v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct.

1184, 1196 (2013) ("Rule 23(b)(3) . . . does *not* require a plaintiff . . . to prove that each element of her claim is susceptible to classwide proof.") (internal quotation marks and brackets omitted).

Fox also concedes that, even under its preferred test, the Court should focus on evidence of the "objective characteristics" of its internship "program" in making the ultimate merits determination. Fox Br. 35-36. Plaintiffs presented such objective evidence and the district court correctly relied on it.

### 3. This Case Is Not Like *Wal-Mart Stores, Inc. v. Dukes*.

Fox's formal policy of using unpaid interns to replace paid workers is not comparable to the unwritten, subjective decision-making practices that the Supreme Court held failed to satisfy commonality in *Wal-Mart*. 131 S. Ct. at 2554-56.

In *Wal-Mart*, a proposed class of over 1.5 million members claimed that *Wal-Mart*'s policy of delegating authority to individual supervisors to make promotion decisions violated Title VII of the Civil Rights Act. *See id.* The Supreme Court held that the policy did not satisfy Rule 23(a)(2) because the plaintiffs had failed to offer evidence that supervisors exercised their discretion in a similar manner. *Id.* at 2554-55. Absent that evidence, the plaintiffs would not be able to prove discriminatory intent, a required element of their disparate treatment claim, on a classwide basis. *See id.* at 2555-56.

51

Critically, even setting aside the other significant distinctions between *Wal-Mart* and this case, the evidence here shows that Fox had a top-down policy of replacing paid workers with unpaid interns and that intern supervisors carried out the policy in a consistent manner. *See supra* Part IV.B.1.

### C. The District Court Acted Within Its Discretion In Finding that Plaintiffs Satisfied Rule 23(b)(3).

The district court acted within its discretion in finding that the common proof predominated and satisfied Rule 23(b)(3). Fox fails to point to proof of individual issues that predominate over the common issues.

### 1. The Common Issues Are Key to the Merits Questions.

The questions that can be answered with common proof, including whether interns displaced regular employees and whether Fox obtained an immediate advantage from interns, are major determinants of the merits and predominate over any individual issues. *See In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 119 (2d Cir. 2013) (predominance is satisfied where "resolution of some of the legal or factual questions . . . can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof") (citation omitted).

Unlike the facially *lawful* exemption policies in FLSA misclassification cases, *see Myers v. Hertz Corp.*, 624 F.3d 537, 549 (2d Cir. 2010), Fox's policy of using unpaid interns to replace paid employees is facially *unlawful*. *See Portland*

52

*Terminal*, 330 U.S. at 153; *Archie*, 997 F. Supp. at 535.  Moreover, unlike in exemption cases, the existence of the policy itself will answer key merits questions, if not resolve the merits entirely.  This is sufficient to satisfy predominance.  *See Amgen*, 133 S. Ct. at 1196.

### 2.     The District Court Was Not Required to State its Rule 23(b)(3) Findings in Detail.

Fox faults the district court for failing to discuss its Rule 23(b)(3) findings in greater detail, but the district court was not required go to great lengths because the basis for its ruling "[wa]s obvious in context."  *Shahriar*, 659 F.3d at 252.  Under such circumstances, this Court "will not reverse a class certification [decision] simply because the district court has not explicitly recited each finding."  *Id.*

Here, the basis for the district court's predominance finding was obvious in context because it explicitly referenced the "generalized proof" that it had analyzed in detail earlier in its decision.  SPA33-34.  As discussed above, that evidence consisted of admissions from high-level decision-makers that the district court found demonstrated a common policy of using unpaid interns to replace paid employees.  Because this evidence will answer several key merits questions, the district court appropriately exercised its discretion to find that predominance was met.  *See Zervos*, 252 F.3d at 169 n.6 ("the concept of discretion implies that a decision is lawful at any point within the outer limits of the range of choices appropriate to the issue at hand") (internal quotation marks omitted).

### 3. Fox's Evidence Does Not Defeat Predominance.

#### a. The Declaration that Fox Submitted Does Not Raise Issues that Predominate.

Although Fox argues that the district court "ignored declarations from at least 13 different intern supervisors," Fox Br. 52, only one of its declarants actually supervised interns who may have fallen within the class definition.[18] *See* A1354 (Shirey Decl.) ¶¶ 3, 5. The other declarants testified about interns who worked outside of New York and are not class members. *See* A1341-53, 1364-69, 1370-78. Although the district court did not reject these declarations,[19] it was not an abuse of discretion for it to conclude that they merited no weight. *See Friend v. Hertz Corp.*, No. 11-16195, 2014 WL 1016848, at *1 (9th Cir. Mar. 18, 2014) (court did not abuse its discretion by not "explicitly analyz[ing] or weigh[ing]" certain evidence where the evidence was not tied to the class certification issues).

The district court did consider the declaration that discussed interns who worked in New York, but appropriately determined that it did not raise individualized issues that predominated. The district court was aware of the declaration and asked Plaintiffs' counsel questions about it during the oral

---

[18] Even this declaration is only marginally relevant because it only discusses interns who worked during one year of the five-year class period. *See* SPA27; A1355 (Shirey Decl.) ¶ 5.

[19] The district court considered the declarations over Plaintiffs' objection that it should strike them because Fox had failed to disclose several of the declarants as witnesses. *See* Dkt. No. 149 at 14; *see also Brown v. Wal-Mart Stores, Inc.*, No. 09 Civ. 3339, 2012 WL 3672957, at *2-3 (N.D. Cal. Aug. 24, 2012).

54

argument. *See* SA20-21. The transcript shows that the district court considered the declaration, but ultimately found that it did not defeat the common evidence that Plaintiffs presented. This was not an abuse of discretion. *See Shahriar*, 659 F.3d at 252 (affirming district court's grant of class certification where "both the record and the transcript" established that there was no abuse of discretion).

### b. The Evidence Established that Fox's Internship Program Was Centrally Designed, Administered, and Overseen.

Contrary to Fox's arguments, the record reflects substantial evidence that Fox operated an internship program that it "centrally control[led]." Fox Br. 52. Its Intern Recruiters played far more than a "ministerial" role, as Fox contends. *Id.* at 15. By their own admission, they screened applicants; obtained, reviewed, and approved Fox employees' requests for interns to ensure they complied with Fox policies; trained intern supervisors; answered intern supervisors' questions about Fox's intern policies; oversaw interns' orientation and completion of required paperwork; and oversaw the program on a day-to-day basis. A458, 460, 527-29, 531, 566-70, 573, 579-80, 582-84, 1636-39.

### c. Evidence that Interns Had Different Duties Does Not Defeat Predominance.

The district court appropriately found that evidence that interns had different duties did not predominate. Unlike the misclassification cases on which Fox relies, in which the exemption issue hinges on the specific duties the workers perform, the

merits questions here do not depend on the performance of specific duties, but on whether interns provided "an immediate advantage" to Fox. This question can be answered the same way for all interns even if they performed different tasks. *See Archie*, 997 F. Supp. at 535 (concluding that plaintiffs who performed different tasks in different departments were all employees because they "performed productive work for the defendants"). Even under Fox's primary beneficiary test, the fact that interns performed different tasks is not relevant because its focus is on whether interns' work – whatever it was – benefitted the employer. *See Laurelbrook*, 642 F.3d at 529.

Moreover, the common evidence shows that interns at Fox did work that directly benefited Fox. Their work provided "[u]seful assistance on key projects and day-to-day operations," helped employees get through busy times, and replaced the work of paid employees. *Supra* Part IV.B. The district court acted within its discretion in concluding that this evidence supported predominance.

### 4. The District Court's Rule 23(b)(3) Finding Is Consistent with *Comcast Corp. v. Behrend*.

The district court did not abuse its discretion by finding that Rule 23(b)(3) was met without specifically citing the Supreme Court's decision in *Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013). The issues in *Comcast* that led the Supreme Court to find that predominance was not met are not present here. In *Comcast*, an antitrust case, the plaintiffs were unable to put forth a way of

56

measuring the class's damages if they prevailed on their theory of liability. 133 S.

Ct. at 1433-35. As a result, the plaintiffs could not "possibly establish that

damages [we]re susceptible of measurement across the entire class for purposes of

Rule 23(b)(3)." *Id.* at 1433.

Unlike *Comcast*, this is a simple wage and hour case where the calculation

of damages is a "purely mechanical process," *Parra v. Bashas', Inc.*, 291 F.R.D.

360, 393 (D. Ariz. 2013), that is well-established through statute and regulation,

*see, e.g.*, 29 U.S.C. § 206(a); 29 C.F.R. § 778.107. Unlike in *Comcast*, the

damages all stem from a single theory of liability – that Fox misclassified the class

as non-employees and failed to pay them minimum wages and overtime. *See Enea*

*v. Bloomberg, L.P.*, No. 12 Civ. 4656, 2014 WL 1044027, at *7 (S.D.N.Y. Mar.

17, 2014) ("Unlike in *Comcast,* Plaintiffs' proposed measure of damages is directly

linked with their theory of liability under NYLL for uncompensated overtime.")

The district court's conclusion that the common liability issues

predominated over the individualized damages questions is consistent with the

majority of courts that have certified wage and hour cases after *Comcast*. *See*

*Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 513-14 (9th Cir. 2013); *Enea*, 2014

WL 1044027, at *6-7; *Kurgan v. Chiro One Wellness Ctrs., LLC*, No. 10 Civ.

1899, 2014 WL 642092, at *9 (N.D. Ill. Feb. 19, 2014); *Rosales v. El Rancho*

*Farms*, No. 09 Civ. 707, 2014 WL 321159, at *6 (E.D. Cal. Jan. 29, 2014), *report*

57

*and recommendation adopted*, 2014 WL 631586 (E.D. Cal. Feb. 18, 2014);

*Megason v. Starjem Rest. Corp.*, No. 12 Civ. 1299, 2014 WL 113711, at *7

(S.D.N.Y. Jan. 13, 2014); *Martins v. 3PD, Inc.*, No. 11 Civ. 11313, 2013 WL

1320454, at *8 n.3 (D. Mass. Mar. 28, 2013).

**V.     The District Court Acted Well Within Its Discretion in Conditionally Certifying the FLSA Collective.**

      **A.     The District Court Applied an Appropriate Standard to Certify the FLSA Collective.**

The district court required Plaintiffs to exceed the "modest factual showing"

that applies at the "first step" of an FLSA case. *Myers*, 624 F.3d at 555. The

district court examined the full record – not just the pleadings and minimal

evidence that can support a first-stage determination – including all of the evidence

on which it relied to find that Rule 23's higher standard was met. *See* SPA35; *see*

*Myers*, 624 F.3d at 556. Having already determined that common evidence would

answer key liability questions under the NYLL, the district court did not abuse its

discretion in holding that the evidence could answer the same key questions under

the FLSA. *See Zervos*, 252 F.3d at 168-69 (where a decision can "be located

within the range of permissible decisions," it is not an abuse of discretion).

Contrary to Fox's argument, the same proof that supports certification of the

NYLL class also supports certification of the FLSA collective. The memorandum

and testimony from Human Resources executives discuss Fox's internship program

generally. Fox does not point to any meaningful differences between internships in New York and those elsewhere. Although Fox is correct that the FLSA collective is broader in geography, it is much narrower in scope because it only covers interns who worked between January and September 2010 and who actually opt in. *See* A1898.

There is no support for Fox's claim that the district court "ignored" its intern supervisor declarations. Fox Br. 52. The district court acknowledged that interns worked in "disparate factual and employment settings," but found that the common issues of liability were more substantial. SPA35. This was not an abuse of discretion. *See Shahriar*, 659 F.3d at 250 ("A district court vested with discretion to decide a certain matter is empowered to make a decision—of *its* choosing—that falls within a range of permissible decisions.") (internal quotation marks omitted).

Moreover, Fox exaggerates the declarations' dissimilarities. Most show that intern supervisors were required to adhere to the same policies, including submitting Intern Request Forms and obtaining candidates from the Intern Recruiters,[20] and the Intern Request Forms show that the declarants assigned interns productive work that benefited Fox.[21]

---

[20] *See, e.g.*, A1350 (Thompson Decl.) ¶ 11 (submitted Intern Request Forms), A1371 (Tuinier Decl.) ¶¶ 5-6 (submitted Intern Request Forms, received intern resumes from recruiter, and recruiter coordinated administrative aspects of onboarding interns), A1888 (Intern Request Form submitted by Thompson).

[21] *See, e.g.*, A992-93, 1862, 1888, 1891.

**B.  The Court Should Not Adopt Rule 23 as the Standard that Applies to Second Stage Certification Motions.**

The Court should not adopt Rule 23 as the standard that applies to second stage certification motions because Congress adopted a standard that is less stringent based on significant differences between FLSA collective actions and Rule 23 class actions.

Under 29 U.S.C. § 216(b), Congress adopted the phrase "similarly situated" as the standard that plaintiffs must meet to litigate their claims on a "collective" basis.  Although Congress amended the FLSA after the present version of Rule 23 was enacted in 1966, it did not adopt Rule 23 as the standard for evaluating whether plaintiffs are "similarly situated" under the FLSA.  *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1105 (10th Cir. 2001); *see Knepper v. Rite Aid Corp.*, 675 F.3d 249, 257 (3d Cir. 2012) (noting that, in 1966, "the Advisory Committee on Civil Rules disclaimed any intention for [Rule 23's] new opt-out rule to affect 29 U.S.C. § 216(b)") (citing Fed. R. Civ. P. 23 advisory committee's note, *reprinted in* 39 F.R.D. 69, 104 (1966)); *O'Brien v. Ed Donnelley Enters., Inc.*, 575 F.3d 567, 584 (6th Cir. 2009) ("While Congress could have imported the more stringent criteria for class certification under [Rule 23], it has not done so in the FLSA."); *cf. Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1532 (2013) ("Whatever significance 'conditional certification' may have in § 216(b) proceedings, it is not tantamount to class certification under Rule 23.").

Congress's decision not to apply Rule 23 to FLSA collective actions is appropriate because they do not implicate the due process concerns at the heart of Rule 23's strict requirements. Unlike Rule 23 class actions, FLSA collective actions require collective members to opt in to be bound by the court's decisions. *See McKenna v. Champion Int'l Corp.,* 747 F.2d 1211, 1213 (8th Cir. 1984) ("parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date"), *abrogated on other grounds by Hoffman-LaRoche Inc. v. Sperling*, 493 U.S. 165 (1989); *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 263 n.17 (S.D.N.Y. 1997) ("Rule 23's requirements are designed to protect the due process rights of absent class members, whereas in an FLSA 'opt-in' action, these requirements need not be strictly observed because there are no absent class members for the court to protect.").

The Seventh Circuit recognized these differences and even noted "the absence from [Section 216(b)] of the kind of detailed procedural provisions found in Rule 23." *See Espensheid v. Directsat USA, LLC*, 705 F.3d 770, 772 (7th Cir. 2013). Its holding, however, that the class and collective action standards should be merged to promote "simplification," *id.*, is incorrect. Even if it would be simpler to have one standard, Congress took a different approach.

61

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court affirm the district court's order granting summary judgment and certifying the class and collective.

Dated:      June 27, 2014
              New York, New York

                            Respectfully submitted,

                            */s/ Rachel Bien*

                            Rachel Bien
                            Adam T. Klein
                            Juno Turner
                            Outten & Golden LLP
                            3 Park Avenue, 29th Floor
                            New York, New York 10016
                            Telephone:  212-245-1000

                            *Attorneys for Plaintiffs-Appellees*

## **CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitation of Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure because it contains 13,985 words, excluding the parts of the brief exempted by Rule 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14-point font.

Dated: June 27, 2014

Respectfully submitted,

*/s/ Rachel Bien*
Rachel Bien