# 13-4478-cv

### IN THE
# United States Court of Appeals
### FOR THE SECOND CIRCUIT

ERIC GLATT, ALEXANDER FOOTMAN, EDEN ANTALIK, and
KANENE GRATTS, on behalf of themselves and all others similarly situated,

*Plaintiffs-Appellees,*

-against-

FOX SEARCHLIGHT PICTURES, INC., and
FOX ENTERTAINMENT GROUP, INC.,

*Defendants-Appellants.*

### PLAINTIFFS-APPELLEES' PETITION FOR REHEARING AND REHEARING *EN BANC*

ADAM T. KLEIN
RACHEL BIEN
JUNO TURNER
OUTTEN & GOLDEN LLP
3 PARK AVENUE
NEW YORK, NEW YORK 10016
TELEPHONE: (212) 245-1000

**Attorneys for Plaintiffs-Appellees**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................... ii

PRELIMINARY STATEMENT ....................................................1

ARGUMENT ..................................................................................6

I.     The Primary Beneficiary Test Conflicts with *Portland Terminal* and Is Inconsistent with this Court's Broad Construction of the FLSA's Coverage .................................................................8

     A.     *Portland Terminal*'s Exception for "Trainees" Is Narrow and Does Not Support the Primary Beneficiary Test ................9

     B.     The Primary Beneficiary Test Conflicts with this Court's Expansive Interpretation of the FLSA's Coverage..................12

II.     The Panel Failed to Include a Factor Addressing the Benefits that Interns Provide to Employers .............................................................15

III.     The Panel's Class and Collective Certification Decisions Conflict with Prior Precedent and Demonstrate the Inflexibility of Its Primary Beneficiary Test ...............................................................19

     A.     The Court Has Previously Held that FLSA Misclassification Cases Are Not Inherently Too Individualized to Certify..........19

     B.     The Panel Should Have Vacated the Certification Orders Without Evaluating the Rule 23 Requirements in Light of Its New Test ............................................................................22

     C.     The Panel's Collective Action Decision Is Inconsistent with the "Low" Standard of Proof that the Court Has Held Applies at the Conditional Certification Stage .........................24

CONCLUSION ....................................................................................28

# <u>TABLE OF AUTHORITIES</u>

**CASES**                                                          **PAGE(S)**

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997)...................................................................21, 22

*Amgen v. Conn. Ret. Plans & Trust Funds*,
   133 S. Ct. 1184 (2013)...............................................................25, 26

*Archie v. Grand Central P'ship, Inc.*,
   997 F. Supp. 504 (S.D.N.Y. 1998) ....................................................18

*Armour & Co. v. Wanock*,
   323 U.S. 126 (1944)..........................................................................2

*Atkins v. Gen. Motors Corp.*,
   701 F.2d 1124 (5th Cir. 1983) .........................................................16

*Carter v. Dutchess Cmty. Coll.*,
   735 F.2d 8 (2d Cir. 1983) ...........................................................14, 15

*Chao v. Gotham Registry, Inc.*,
   514 F.3d 280 (2d Cir. 2008) ......................................................*passim*

*Dejesus v. HF Mgmt. Servs., LLC*,
   726 F.3d 85 (2d Cir. 2013) ...........................................................7, 8

*Donovan v. New Floridian Hotel, Inc.*,
   676 F.2d 468 (11th Cir. 1982) .........................................................14

*Eubank v. Pella Corp.*,
   753 F.3d 718 (7th Cir. 2014) ...........................................................21

*Glatt v. Fox Searchlight Pictures Inc.*,
   293 F.R.D. 516 (S.D.N.Y. 2013) ......................................................21

*Glatt v. Fox Searchlight Pictures, Inc.*,
   791 F.3d 376 (2d Cir. 2015) ......................................................*passim*

*Hart v. Rick's Cabaret Int'l Inc.*,
   No. 09 Civ. 3043, 2010 WL 5297221 (S.D.N.Y. Dec. 20, 2010) ......................20

*Hoffmann-La Roche Inc. v. Sperling*,
    493 U.S. 165 (1989)........................................................................26

*Jacob v. Duane Reade, Inc.*,
    289 F.R.D. 408 (S.D.N.Y. 2013) .....................................................20

*Kaplan v. Code Blue Billing & Coding, Inc.*,
    504 Fed. Appx. 831 (11th Cir. 2013).............................................16

*McReynolds v. Merrill Lynch et al.*,
    672 F.3d 482 (7th Cir. 2012) ..........................................................26

*Morgan v. Family Dollar Stores, Inc.*,
    551 F.3d 1233 (11th Cir. 2008) ......................................................26

*Mullins v. Direct Digital, LLC*,
    --- F.3d ----, 2015 WL 4546159 (7th Cir. 2015)............................27

*Myers v. Hertz Corp.*,
    624 F.3d 537 (2d Cir. 2010) ....................................................*passim*

*Okoro v. Pyramid 4 Aegis*,
    No. 11 Civ. 267, 2012 WL 1410025 (E.D. Wis. Apr. 23, 2012)......17

*Petroski v. H&R Block Enters., LLC*,
    750 F.3d 976 (8th Cir. 2014) ..........................................................17

*Powell v. U.S. Cartridge Co.*,
    339 U.S. 497 (1950).........................................................................8

*Reich v. Parker Fire Protection Dist.*,
    992 F.2d 1023 (10th Cir. 1993) ................................................16, 17

*Roach v. T.L. Cannon Corp.*,
    778 F.3d 401 (2d Cir. 2015) ...........................................................22

*Rutherford Food Corp. v. McComb*,
    331 U.S. 722 (1945).........................................................................7

*Skidmore v. Swift & Co.*,
    323 U.S. 134 (1944).......................................................................16

iii

*Solis v. Laurelbrook Sanitarium & Sch., Inc.*,
    642 F.3d 518 (6th Cir. 2011) ............................................................16

*Suchanek v. Sturm Foods, Inc.*,
    764 F.3d 750 (7th Cir. 2014) ............................................................27

*Tony & Susan Alamo Found. v. Sec'y of Labor*,
    471 U.S. 290 (1983)..................................................................*passim*

*U.S. v. Rosenwasser*,
    323 U.S. 360 (1945)..................................................................6, 7

*Walling v. Portland Terminal Co.*,
    330 U.S. 148 (1947)..................................................................*passim*

*Wang v. Chinese Daily News, Inc.*,
    737 F.3d 538 (9th Cir. 2013) ............................................................22

*Wang v. Hearst Corp.*,
    --- Fed. App'x. ----, 2015 WL 4033091 (2d Cir. July 2, 2015)............................1

*Wirtz v. Wardlaw*,
    339 F.2d 785 (4th Cir. 1964) ............................................................10

**FEDERAL STATUTES**

29 U.S.C. § 203(g) ............................................................2

29 U.S.C. § 214(a) ............................................................10

**STATE STATUTES**

N.Y. Lab. Law § 651............................................................20

**REGULATIONS**

29 C.F.R. § 520.200. ............................................................10

29 C.F.R. § 520.201b)............................................................11, 12

29 C.F.R. § 520.404(b) ............................................................11

29 C.F.R. § 520.408(a)(1)............................................................11

## OPINION LETTERS

U.S. Dep't of Labor Op. Ltr., 1994 WL 1004761 (Mar. 25, 1994)........................17

U.S. Dep't of Labor Op. Ltr., No. FLSA2002-9, 2002 WL 32406599
(Oct. 7, 2002) ....................................................................................................16

Petitioners, Plaintiffs-Appellees in *Glatt v. Fox Searchlight Pictures, Inc.*, 13-4478-cv, and Plaintiffs-Appellants in *Wang v. Hearst Corp.*, 13-4480-cv, respectfully submit this petition for rehearing, pursuant to Fed. R. App. P. 40, and for rehearing *en banc*, pursuant to Fed. R. App. P. 35, of the panel's July 2, 2015 decisions.[1]

## PRELIMINARY STATEMENT

These cases involve matters of exceptional importance and questions of first impression for the Court – what standard should it adopt to determine whether a person labeled as an "intern" by a for-profit employer is an "employee" under the Fair Labor Standards Act ("FLSA") and whether a district court may certify a class and collective of unpaid interns who claim they are entitled to the minimum wage. The panel's answer – a newly-created "primary beneficiary test" that requires interns to show that they benefited from the relationship less than the employer and that is so "highly individualized" that it can only be applied on an intern-by-intern basis – conflicts with binding U.S. Supreme Court precedent and this Court's decisions.

---

[1]     The appeals were heard in tandem.  The panel's decisions are attached, and are reported at *Glatt v. Fox Searchlight Pictures, Inc.*, 791 F.3d 376 (2d Cir. 2015) ("*Glatt*"), and *Wang v. Hearst Corp.*, --- Fed. App'x. ----, 2015 WL 4033091 (2d Cir. July 2, 2015) ("*Wang*").

The panel's "who benefited more" test conflicts with *Walling v. Portland Terminal Co.*, 330 U.S. 148 (1947), the binding Supreme Court precedent that articulates the narrow circumstances in which employers can exclude "trainees" from FLSA coverage. The test is also a sharp departure from a long line of cases that have applied the FLSA to workers who produce few direct benefits for an employer, including those whose work is outweighed by its cost or who merely wait for work, in accordance with the FLSA's mandate that employers compensate all work that they "suffer or permit." 29 U.S.C. § 203(g); *see Armour & Co. v. Wanock*, 323 U.S. 126, 133 (1944); *Chao v. Gotham Registry, Inc.*, 514 F.3d 280, 286-90 (2d Cir. 2008).

More fundamentally, the panel's new test is unfaithful to the FLSA's goal of curtailing unpaid labor because it permits employers to accept interns' work, even substantial amounts of it, without paying for it. As the FLSA's drafters understood and the Supreme Court has recognized, the use of unpaid labor harms the economy by "exert[ing] a general downward pressure on competing businesses" that "affect[s] many more people than those workers directly at issue[.]" *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 302 (1983) ("*Alamo*"). When companies do not pay for work, the "floor for the entire industry falls," depressing the wages of all workers or eliminating their jobs entirely. *Id.* This is the story of unpaid internships.

Today's interns are largely young or inexperienced workers so desperate to obtain scarce entry-level jobs that they are willing to work for months performing entry-level tasks for free.[2]  Most are not part of a formal training program designed for their benefit.[3]  As the internships at issue here demonstrate, many interns are indistinguishable from regular employees except for their "intern" label.  They work long hours filing, organizing, running errands, and even doing manual labor.[4]  This is "work" by any definition and certainly within the meaning of the FLSA.[5]

---

[2]  *See Amici curiae* Economic Policy Institute, *et al.* (collectively, "EPI") Br. 5-7, 12-17 (*Glatt* docket, ECF No. 128); *Amici curiae* American Federation of State, County and Municipal Employees, *et al.* (collectively, "AFSCME") Br. 7-9 (*Glatt* docket, ECF No. 145).

[3]  *See* EPI Br. 16-17, 20-24.  Many schools that sponsor internships admit that they fail to monitor them and ensure that they are genuinely educational experiences.  *See* EPI Br. 20-24.

[4]  For example, Plaintiff Eric Glatt worked five days a week, from 9 a.m. to 7 p.m., copying, filing, scanning, and performing other tasks that his supervisor admitted would have been done by paid workers.  *Glatt*, 791 F.3d at 379; Appendix in *Glatt*, ECF Nos. 86-93 ("*Glatt* A") A328.  Plaintiff Xuedan Wang worked five days a week, from 9 a.m. to 8 p.m. or later, supervised six to eight other interns, and unpacked and re-packed accessories in the "fashion closet," where clothing and accessories are stored, went on errands to return and pick up accessories, and kept the closet organized.  Appendix in *Wang*, ECF Nos. 36-54 ("*Wang* A") A3348 (¶¶164-66), 3349 (¶172), 3350 (¶¶175-76), 3351 (¶181), 3352 (¶187), 3354 (¶¶198-199), 3357 (¶213).  Wang's supervisor testified that, when he lacked interns, he and other editors worked "much longer" hours or they paid someone to do the interns' work.  *Wang* A3347 (¶¶159-60).

[5]  *See, e.g., Gotham Registry*, 514 F.3d at 285.

Before the use of unpaid interns surged in the last 15 years, paid, entry-level employees performed much of the work that unpaid interns do now.[6] The 2008 recession exacerbated this, as employers used more and more unpaid interns to cut costs.[7] At Defendant-Appellant Fox Entertainment Group, Inc. ("Fox"), the number of unpaid internships exploded as the company reduced employee overtime and cut back on paid workers.[8] At Defendant-Appellee Hearst Corp. ("Hearst"), magazine editors instructed staff to cut costs by using interns to pick up and return garments instead of paying messengers to do it.[9]

The panel's relative benefits analysis ignores this reality, and permits employers to continue to benefit from interns' work without paying for it. In fact, as these cases show, employers' use of unpaid interns to do productive work is the "central feature of the modern internship" – not, as the panel assumed, "the relationship between the internship and the intern's formal education." *Glatt*, 791 F.3d at 385. Several Plaintiffs were not students when they interned,[10] and those who were students and received school credit for their internships were not

---

[6]   *See* EPI Br. 12-15.
[7]   *Id.*; *see Glatt* A1736; *Glatt* Supplemental Appendix ("*Glatt* SA") 8; *Wang* A2211.
[8]   *Glatt* A1736; *Glatt* SA8.
[9]   *Wang* A2211-12; *see also Wang* A2208; 1269-71.
[10]   *Glatt*, 791 F.3d at 379-80; *Glatt* A338; *Wang* A2794 (¶6), 3345 (¶152).

4

supervised by their schools or required to meet demanding academic or educational criteria, and received little to no training during their internships except how to perform their specific tasks.[11]

Even if the primary beneficiary test is appropriate, however, the factors it articulated are too narrow because they do not account for the full range of benefits that interns provide to employers through their productive work.  As a result, the factors are lopsided in favor of employers and fail to capture the full economic reality of most unpaid internships, in which interns regularly perform work for employers as part of their operations.

In addition, the factors, at least in the panel's view, are so individualized that unpaid interns may be incapable of challenging an employer's classification policy as a class.  This underscores the test's impracticality and makes intern cases unlike other FLSA misclassification cases that do not require "*inherently* individualized inquir[ies]."  *Myers v. Hertz Corp.*, 624 F.3d 537, 549 (2d Cir. 2010).  A test that evaluates whether an intern is an "employee" – a definition intended to be sweeping – should not be different than other FLSA inquiries.  The test should also

---

[11]     *See Wang* A3360-61 (¶¶232-34), 3375 (¶¶ 296-97), 3379-80 (¶¶318-21), 3382-83 (¶¶332-35), 3385 (¶347), 3386 (¶¶352-53), 3388 (¶361), 3389 (¶363), 4630-31 (86:22-87:3), 4698-99 (226:21-227:9), 5479 (¶12), 5485 (¶D30), 5505-08 (¶¶D107-122).

not, by its very nature, preclude interns from joining together as a class to challenge an employer's classification policy.

The Court should rehear these appeals and replace the panel's newly-created exception to coverage with a test that is faithful to the FLSA, fully recognizes the economic reality of unpaid internships – including the direct benefits that interns provide to employers, and does not purport to require employers or courts to make coverage decisions on an intern-by-intern basis.

## ARGUMENT

The FLSA does not exempt interns. It defines an "employee" in the broadest terms ever used in any statute. *See U.S. v. Rosenwasser*, 323 U.S. 360, 362 (1945). Nonetheless, the employers in these cases and in others have claimed that the Supreme Court's holding in *Portland Terminal*, a case that involved railroad "trainees" in a one-week vocational program who did not "expedite the company business," applies to interns. *See* 330 U.S. at 150, 152-53. The holding in *Portland Terminal* – that the trainees were not employees – hinged on "the unchallenged finding[]" that the company "receive[d] no 'immediate advantage' from any" of the trainees' work. *Id.* at 153; *see also Alamo*, 471 U.S. at 300. The Supreme Court made clear that its holding did not extend to circumstances, presented by these cases and by most modern-day internships, in which employers

"accept[] the services of beginners" without paying for them.  *Portland Terminal*, 330 U.S. at 153.

The "primary beneficiary" test that the panel adopted in these cases conflicts with *Portland Terminal*'s holding, which was limited to trainees who work "*solely* for [their] personal purpose or pleasure," and whose work provides "no 'immediate advantage'" to their employer.  *Alamo*, 471 U.S. at 295, 300 (quoting *Portland Terminal*, 330 U.S. at 152-53) (emphasis added).  The primary beneficiary test is much broader than the narrow exception to FLSA coverage that *Portland Terminal* created, excluding many interns from coverage even though their work directly benefits their employer in addition to themselves.  *See Glatt*, 791 F.3d at 383-84.

The test also conflicts with Supreme Court and Second Circuit decisions that have consistently construed the FLSA's definition of "employee" expansively in light of the Act's remedial purposes.  *See Alamo*, 471 U.S. at 302; *see also Rosenwasser*, 323 U.S. at 362-63; *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 729 (1945); *Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 91 (2d Cir. 2013), *cert. denied*, 134 S. Ct. 918 (2014).  The panel's primary beneficiary test narrows this definition by allowing an employer not to pay an intern for her productive work so long as she benefits more than the employer does.  *See Glatt*, 791 F.3d at 383-84.

Who benefits *more* has never been (and should not be) a litmus test for employment under the FLSA. If it was, then, employers could deny the minimum wage to inexperienced workers, workers with poor performance, or those who are most desperate for a job because, under these circumstances, employers may benefit less than the workers do.

## I. The Primary Beneficiary Test Conflicts with *Portland Terminal* and Is Inconsistent with this Court's Broad Construction of the FLSA's Coverage.

The panel's "primary beneficiary" test is contrary to the text and purpose of the FLSA and is inconsistent with *Portland Terminal*'s narrow holding. Congress defined "employee" with "striking breadth" to extend the FLSA's protections to "many persons and working relationships" not previously protected by any labor law. *Dejesus*, 726 F.3d at 91 (internal quotation marks and citation omitted). The primary beneficiary test severely narrows the FLSA's protections for interns by limiting them to those who can show that their employers benefited more from the relationship than they did. *See Glatt*, 791 F.3d at 383-84. The label "intern" does not justify this substantial curtailment of rights for a significant class of workers. *See Powell v. U.S. Cartridge Co.*, 339 U.S. 497, 528 (1950) ("Our decisions have made one thing clear about the Fair Labor Standards Act: its applicability is not fixed by labels that parties may attach to their relationship nor by common law categories nor by classifications under other statutes.").

8

A.    *Portland Terminal*'s Exception for "Trainees" Is Narrow and Does Not Support the Primary Beneficiary Test.

The primary beneficiary test is inconsistent with the narrow exception to the FLSA's broad coverage that *Portland Terminal* established for certain *bona fide* trainees.  In *Portland Terminal*, trainee railroad "brakemen" participated in a seven or eight day vocational program offered by a railroad company.  330 U.S. at 149. They trained under the close supervision of the company's employees, who did most of the work themselves.  *Id*. at 149-50.  They did "not expedite the company business," sometimes "impede[d]" it, and did not "displace any of the regular employees."  *Id*. at 150.  "Accepting the unchallenged findings . . . that the railroads receive[d] no 'immediate advantage' from any work done by the trainees," the Supreme Court held "that they [we]re not employees within the [FLSA]'s meaning."  *Id*. at 153.

The Supreme Court did not authorize courts to balance the benefits provided by trainees against those offered by an employer, because its holding was limited to employers who "receive *no* 'immediate advantage' from *any work* done by the trainees."  *Id*. (emphasis added).  To the contrary, the Supreme Court repeatedly emphasized that the trainees were not employees because the railroads did not receive *any* direct benefits from the trainees' work and the trainees derived *all* of the benefits from the training.  *See id*. at 150 (trainees did "not expedite the company business," but "actually impede[d] and retard[ed] it"), 152 (FLSA

9

"cannot be interpreted so as to make a person whose work serves *only his own interest* an employee of another person who gives him aid and instruction") (emphasis added); *see also Wirtz v. Wardlaw*, 339 F.2d 785, 787-88 (4th Cir. 1964) ("This case is not like [*Portland Terminal*], where it was held that workers whose efforts served their own interests exclusively and did not expedite and in fact impeded the business enterprise were not 'employees.'").

In fact, the Supreme Court drew a clear line between the facts that supported its holding that the trainees were not employees and cases in which an employer has "evasively accepted the services of beginners" in training for employment. *See Portland Terminal*, 330 U.S. at 153. When *Portland Terminal* was decided, Congress and the U.S. Department of Labor ("DOL") had already addressed whether beginners, learners, or others training for employment must be paid the minimum wage. They determined that employers could not "suffer or permit" their work and pay them less than the minimum wage unless the employer met certain requirements. *See id.* at 151-52; 29 U.S.C. § 214(a); 29 C.F.R. §§ 520.200 *et seq.* Employers who met the requirements could receive a certificate from the DOL allowing them to pay less than the full minimum wage to those who "when

10

initially employed, produce[] little or nothing of value," for a limited period "of job-related and/or vocational training[.]"[12]  29 C.F.R. § 520.201(b).

The purpose of the FLSA's trainee provisions is to encourage employers to take on inexperienced workers, despite the limited benefits they provide, because exempting them entirely would thwart the FLSA's goal of expanding employment. *See Portland Terminal*, 330 U.S. at 151.  The primary beneficiary test conflicts with this statutory and regulatory scheme, which reduces the minimum wage burden on employers providing training to inexperienced workers who produce few benefits initially, but does not eliminate the burden altogether.

The panel failed to consider this backdrop to the Supreme Court's decision in *Portland Terminal*, and thus misapprehended how narrow its holding really is. The Supreme Court did not authorize what the primary beneficiary test permits – the payment of no wages to interns who provide an immediate advantage to an employer but obtain greater benefits in return – because it conflicts not only with the FLSA's broad coverage of workers, but specifically with Congress's

---

[12]    To obtain a certificate, among other things, employers must demonstrate that paying substandard wages will "not tend to create unfair competitive labor cost advantages nor have the effect of impairing or depressing wage rates or working standards of experienced workers performing work of a like or comparable character in the industry."  29 C.F.R. § 520.404(b).  The rate of pay for learners is 95 percent of the applicable minimum wage.  *See* 29 C.F.R. § 520.408(a)(1).

11

determination that trainees who provide direct benefits, however small, must be paid something. *See Portland Terminal*, 330 U.S. at 153; 29 C.F.R. § 520.201(b).

Read correctly, *Portland Terminal* holds that employers are relieved of their FLSA obligations to trainees *only* when they "receive no 'immediate advantage' from any work done by the trainees" because otherwise the trainees are employees. 330 U.S. at 151-53. This is the overarching question – not who benefits *more* – that the panel should have addressed in evaluating unpaid interns' employment status under the FLSA.

### B. The Primary Beneficiary Test Conflicts with this Court's Expansive Interpretation of the FLSA's Coverage.

The focus on who benefited *more* – rather than on whether work for an employer was performed *at all* – conflicts with the Court's prior precedent. In *Gotham Registry*, the Court rejected a similar argument that an employer does not have an obligation to compensate work if the benefit of the work is outweighed by its cost. 514 F.3d at 286-87. In that case, the employer argued it was not required to compensate allegedly unauthorized overtime that nurses performed because "the income generated by the[] unauthorized hours [wa]s offset by the administrative burdens of" paying the overtime. *Id.* at 286. The employer also claimed that the benefits of the overtime principally flowed not to it, but to the nurses or to others who acted "in furtherance of their own interests" in deciding to work the overtime. *Id.*

The Court held that "work is work," rejecting the implication that there could be a "new category of exertion, call it quasi-work, that was not contemplated by the drafters of the [FLSA] and is subject to its own compensation rules." *Id.* The Court also rejected the "implication that unprofitable labor is not work under the Act" because it led to "a number of untenable conclusions" that were inconsistent with the FLSA's remedial goals.[13] *Id.* at 287.  Finally, relying on *Alamo*, the Court rejected the employer's argument that it did not "suffer or permit" the work, within the meaning of the FLSA, because the nurses did it voluntarily.  *Id.* at 289.  The "reason" that a worker works is "immaterial," the Court held, so long as the employer knows or has reason to know the work is being done.  *Id.* at 289-90 (internal quotation marks omitted).

Although the legal questions in *Gotham Registry* differ from those in this case, the Court's rationale for its holding applies equally well.  Interns' "work is work" under the FLSA, even if the value of the work to the employer may not be

---

[13]     In particular, in the case at hand, the Court noted that the argument conflicted with Congress's intent to make overtime unappealing, so that employers would be encouraged to reduce workers' hours by spreading the work to more workers.  *See Gotham Registry*, 514 F.3d at 287.

substantial.[14]  *See id*. at 286-87.  There is no category of "quasi-work" that would permit a private employer who accepts interns' work not to pay for it.  *See id*. at 286.  The primary beneficiary test inappropriately authorizes this.

The primary beneficiary test is also inconsistent with the principles that underlie this Court's other economic reality tests.  The Court has repeatedly rejected tests that fail to give effect to the FLSA's broad definitions or that prevent its minimum wage provisions from "hav[ing] the widest possible impact in the national economy."  *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1983).  For example, in *Carter*, the Court rejected a test that would have effectively precluded prison inmates from asserting minimum wage claims against private employers by requiring them to show that the employer possessed "'ultimate' [control] in order to justify a finding of an employer-employee relationship."  *Id*.  The Court held that it ran "counter to the breadth of the statute and to the Congressional intent to" permit an employer to "escape compliance with the Act" because its control over a worker is "qualified" and incomplete.  *Id*. at 12-13.  Moreover, allowing employers to hire prison inmates at lower pay would result in unfair competition "not only among employers, but also among workers looking

---

[14]     *See also Donovan v. New Floridian Hotel, Inc.*, 676 F.2d 468, 471 n.3 (11th Cir. 1982) (plaintiffs were employees even though they performed their tasks so poorly that it produced little of value).

for jobs" who would be unable to compete for the same jobs without accepting substandard wages. *Id*. at 13.

The panel did not take these principles into account in adopting the primary beneficiary test. As discussed above, the test excludes an entire category of interns from coverage – those who benefit more from their internships than their employer gains – allowing employers to reap benefits from intern labor for free. This opens the door to the "unfair competition" that the FLSA prohibits, by driving down the wages of paid workers who would otherwise perform the work and discouraging employers from paying workers for the work interns do for free. *See id*.; *see also Alamo*, 471 U.S. at 302.

## II.     The Panel Failed to Include a Factor Addressing the Benefits that Interns Provide to Employers.

Even if the Court adopts a primary beneficiary test, it should add a factor addressing the extent to which the intern provides direct benefits to the employer, and instruct district courts to give this factor great weight. Although this fact was key to the Supreme Court's holding in *Portland Terminal* that the trainees were not employees, *see* 330 U.S. at 153, the panel left it out of the analysis altogether.

15

The DOL has considered this factor to be critical in trainee cases.[15]  *See* U.S.

Dep't of Labor Op. Ltr., No. FLSA2002-9, 2002 WL 32406599, at \*3-4 (Oct. 7,

---

[15]  The panel rejected the six criteria that the DOL has applied in trainee and intern cases for decades, including the fourth criterion: "The employer that provides the training derives no immediate advantage from the activities of the intern; and on occasion its operations may actually be impeded."  *See Glatt*, 791 F.3d at 382.  While courts have given the criteria varying amounts of deference, nearly all have found them to be at least "relevant" in distinguishing between trainees and employees.  *See Reich v. Parker Fire Protection Dist.*, 992 F.2d 1023, 1027 (10th Cir. 1993) ("We are satisfied that the six criteria are relevant but not conclusive to the determination of whether these firefighter trainees were employees under the FLSA . . . ."); *see also Kaplan v. Code Blue Billing & Coding, Inc.*, 504 Fed. Appx. 831, 835 (11th Cir. 2013) (applying DOL criteria and finding that they are worthy of deference); *Solis v. Laurelbrook Sanitarium & Sch., Inc.*, 642 F.3d 518, 524-25 (6th Cir. 2011) (rejecting the DOL's "all-or-nothing approach" in favor of a "totality of the circumstances" approach, but finding that its criteria "may be helpful in guiding that inquiry"); *Atkins v. Gen. Motors Corp.*, 701 F.2d 1124, 1128 (5th Cir. 1983) (holding that the criteria were entitled to "substantial deference").

The panel held that the criteria were not worthy of deference because they are "essentially a distillation of the facts discussed in *Portland Terminal*."  *Glatt*, 791 F.3d at 383.  As a result, the panel concluded that the criteria do not reflect the DOL's "interpretation of ambiguous statutory terms or its own regulations," which would be eligible for deference under *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944), but rather its interpretation of a judicial decision, which is not entitled to deference.  *Glatt*, 791 F.3d at 383.  However, the fact that the criteria are consistent with *Portland Terminal* does not mean that the DOL was interpreting that decision.  To the contrary, the DOL states in its Fact Sheet that it is interpreting the definition of "employ" under the FLSA, *see Glatt* A1338, which it unquestionably has the authority to do.  *See Gotham Registry*, 514 F.3d at 288 ("Although courts are responsible for final decisions concerning interpretation of the Act, . . . the [DOL's] explanations bearing on the meaning of 'suffer or permit' and 'work' . . . are entitled to our respect.") (internal citation omitted).  It cannot be the case that the criteria would have been more worthy of deference if they had departed from

16

2002) (students who volunteered to bag groceries for charity were employees because their work provided an economic benefit to the store and reduced the workloads of regular employees); U.S. Dep't of Labor Op. Ltr., 1994 WL 1004761, at *1-2 (Mar. 25, 1994) (interns who assisted in the daily operations of a youth hostel were employees). Courts have also given the factor great weight in determining whether interns or trainees are employees. *See Petroski v. H&R Block Enters., LLC*, 750 F.3d 976, 980-81 (8th Cir. 2014) (employer "receive[d] no immediate advantage from the rehire training . . . . [Trainees] d[id] not . . . complete any . . . work for [the employer's] clients during the rehire training . . . [and they] d[id] not displace any regular employees, nor d[id] their completion of the training expedite [the employer's] business"); *Parker Fire*, 992 F.2d at 1025, 1028 (defendant was not immediately benefitted by the trainees' activities . . . . Trainees did not assume the duties of career firefighters. They were not assigned to shifts; they did not conduct inspections or engage in public education; they did not maintain any equipment other than training equipment"); *Okoro v. Pyramid 4 Aegis*, No. 11 Civ. 267, 2012 WL 1410025, at *10 (E.D. Wis. Apr. 23, 2012) (considering whether work of purported "volunteer" provided any "immediate

---

*Portland Terminal*, but this is what the panel's decision implies. *See Glatt*, 791 F.3d at 383.

17

advantage" to employer and finding that "the nature of the work that she performed, such as cleaning, picking up prescriptions, appearing in court on behalf of clients at the facility, and calling in hours for caregivers to Paychex, was undeniably of substantial assistance to [the employer]"); *Archie v. Grand Central P'ship, Inc.*, 997 F. Supp. 504, 533 (S.D.N.Y. 1998) (determining that employer gained an immediate advantage by offering services that "trainees" helped to provide at "below market rates").

Although the panel's sixth factor asks whether interns' work "displaces" the "work of paid employees," *Glatt*, 791 F.3d at 384, it is too limited and does not address the broader question of whether the employer obtains *any* direct benefits from intern labor, such as using interns to supplement its existing staff or perform work that contributes to its operations. Even work that does not displace other employees can benefit an employer and should be compensated. This must be considered under a test that purports to evaluate the "economic reality as it exists between the intern and the employer." *Id*. The panel's narrow articulation is not faithful to *Portland Terminal*, or to the FLSA's expansive definitions and remedial goals.

18

**III.    The Panel's Class and Collective Certification Decisions Conflict with Prior Precedent and Demonstrate the Inflexibility of Its Primary Beneficiary Test.**

The panel's class and collective certification decisions provide further support for replacing its primary beneficiary test because, according to the panel, the test is so "highly individualized" that it will be all but impossible to apply to a class of interns.  *Glatt*, 791 F.3d at 386.  In addition, it was not appropriate for the panel to prematurely assess the propriety of certification in light of its new standard because Plaintiffs did not have an opportunity to brief whether other evidence in the record supported certification under the panel's new factors. Instead, the panel should have simply vacated the prior orders without comment and remanded for the district court to evaluate any renewed motion in the first instance.

**A.    The Court Has Previously Held that FLSA Misclassification Cases Are Not Inherently Too Individualized to Certify.**

The panel's class certification decision suggests that intern cases will be harder to certify under Federal Rule of Civil Procedure 23 than any other type of FLSA case and may even be incapable of certification because, according to the panel, the primary beneficiary factors it adopted are "highly individualized." *Glatt*, 791 F.3d at 386.  In *Myers*, however, the Court held that simply because an inquiry under the FLSA is fact-intensive – in that case, whether the plaintiff was exempt under the executive exemption – does not make the question "*inherently*

19

individualized" such that class certification is never appropriate.  624 F.3d at 549.

The Court noted with approval several cases that courts had certified based on

"evidence tending to show" that the class was "similar in ways material to the

establishment of the exemption criteria."  *Id.*

Intern cases should not be different, especially in light of how expansive the

New York Labor Law's definition of employee is.[16]  It should not be more difficult

for unpaid interns to certify a class than other workers, like independent

contractors or "exempt" employees, who must also show that a fact-intensive test

is capable of class-wide resolution.  These cases are routinely certified by district

courts in this Circuit.  *See, e.g., Jacob v. Duane Reade, Inc.*, 289 F.R.D. 408, 413-

24 (S.D.N.Y. 2013), *on reconsideration in part*, 293 F.R.D. 578 (S.D.N.Y. 2013),

*aff'd*, 602 Fed. Appx. 3 (2d Cir. 2015) (certifying class of allegedly exempt

assistant store managers at retail locations throughout metropolitan New York);

*Hart v. Rick's Cabaret Int'l Inc*., No. 09 Civ. 3043, 2010 WL 5297221, at *6-8

---

[16]    Plaintiffs brought their claims pursuant to Federal Rule of Civil Procedure
23 under the New York Labor Law, which uses language that is nearly identical to
the FLSA to define "employee," "employer," and "employ."  *See* N.Y. Lab. Law
§§ 651(5), 651(6); *Glatt*, 791 F.3d at 381.

(S.D.N.Y. Dec. 20, 2010) (granting class certification of allegedly misclassified independent contractors).[17]

Even though the panel did not categorically rule out the possibility that the district court could certify the intern classes in these cases, *see Glatt*, 791 F.3d at 387 n.5, its language will undoubtedly dissuade other courts from allowing interns to join together to challenge an employer's policy of classifying them as non-employees. Most interns will not file cases at all, even meritorious ones, because they lack the resources to bring their minimum wage claims individually. *See Eubank v. Pella Corp.*, 753 F.3d 718, 719 (7th Cir. 2014) (noting that class actions are "especially important when each claim is too small to justify the expense of a separate suit, so that without a class action there would be no relief, however meritorious the claims"). This outcome will undermine the FLSA's remedial goals and the intent behind Rule 23. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591,

---

[17]    If the panel's test truly departs so markedly from the standards courts apply in other FLSA cases, it will have an adverse practical effect as well. As the district court in *Glatt* found, the test will be challenging for employers to use to make uniform personnel decisions about interns. *See Glatt v. Fox Searchlight Pictures Inc.*, 293 F.R.D. 516, 532 (S.D.N.Y. 2013), *on reconsideration in part*, No. 11 Civ. 6784, 2013 WL 4834428 (S.D.N.Y. Aug. 26, 2013), *motion to certify appeal granted*, 2013 WL 5405696 (S.D.N.Y. Sept. 17, 2013), *vacated and remanded*, 791 F.3d 376 (2d Cir. 2015) (rejecting the primary beneficiary test because it is "subjective and unpredictable," and because, under it, "the very same internship position might be compensable as to one intern, who took little from the experience, and not compensable as to another, who learned a lot").

617 (1997) ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.") (internal quotation marks and citation omitted).

### B. The Panel Should Have Vacated the Certification Orders Without Evaluating the Rule 23 Requirements in Light of Its New Test.

The panel should not have waded into whether, under its new criteria, the current records established Rule 23's requirements. Instead, it should have vacated the prior orders without commenting on the likelihood of certification under its test because Plaintiffs did not have an opportunity to brief the issue under the new standard or point to different evidence in the record establishing that the factors could be answered through common proof. *See, e.g., Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 409 n.5 (2d Cir. 2015) (declining to "order class certification on the present record" and remanding to the district court to decide under the appropriate standard); *Wang v. Chinese Daily News, Inc*., 737 F.3d 538, 544 (9th Cir. 2013) (vacating the district court's commonality finding in light of *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011), and instructing the district court to reconsider the record in light of the new standard).

The panel's rather cursory review of the *Glatt* record in light of the new factors demonstrates the need for additional briefing. The panel concluded that Plaintiffs' evidence of Fox's policy of using interns to replace paid employees did not address some of the factors, but the panel did not evaluate whether there was other evidence in the record that might do so. *See Glatt*, 791 F.3d at 386. Instead, the panel relied entirely on Fox's contested argument that its internship program differed across departments, without explaining how any of these "differences" related to the factors. *Id*.

In fact, the record does not support Fox's argument that there were differences that predominated over the common features of its program. To the contrary, the record shows that Fox ran a centralized program, with uniform goals and expectations for interns, including that they be eligible to receive school credit, and that its employees typically used interns to serve their own needs by assisting with their day-to-day work.[18] As Plaintiffs pointed out to the panel, Fox submitted just one declaration from an employee who supervised interns in the potential

---

[18] *See* Brief for Plaintiffs-Appellants, No. 13-4478, ECF No. 122 ("*Glatt* App. Br.") at 47-50, 54-56. *See Glatt* A458, 460, 462, 473, 523-24, 527-29, 531, 534, 566-70, 573, 579-80, 582-84, 931, 935, 950, 953, 962-64, 967, 970-76, 979, 984, 987, 990-93, 1636-39.

23

class.[19] This evidence was not "substantial." *Glatt*, 791 F.3d at 386. The panel did not subject Fox's evidence to scrutiny, or consider the common evidence that supported certification. The panel should not have pre-judged the outcome of renewed certification motions before vacating and remanding. It should have allowed the district court to decide the issue on a blank slate.

### C. The Panel's Collective Action Decision Is Inconsistent with the "Low" Standard of Proof that the Court Has Held Applies at the Conditional Certification Stage.

The panel declined to address the question that Fox raised on appeal – whether the district court appropriately certified the collective under the higher second-stage standard for motions made after discovery – and instead held that Plaintiffs' evidence failed even to satisfy the first-stage conditional certification standard, which was never part of this case. *See Glatt*, 791 F.3d at 387-88. In particular, the panel held that "[n]one of the common proof identified by [Plaintiffs], and relied on by the district court, will address" the "individual aspects of the intern's experience" that the primary beneficiary test requires. *Id*. at 388.

This level of proof is far above the "modest factual showing" that this Court has held is needed to issue notice to potential collective members. *Myers*, 624 F.3d at 555 (internal quotation marks omitted). According to the Court, this burden

---

[19] *See Glatt* App. Br. at 54.

must "remain a low standard of proof because the purpose of th[e] first stage is merely to determine *whether* 'similarly situated' plaintiffs do in fact exist." *Id*. By contrast, the second stage determination asks "whether the plaintiffs who have opted in are *in fact* 'similarly situated' to the named plaintiffs." *Id*. (emphasis added).

Plaintiffs' evidence of Fox's corporate-wide policy of using interns to reduce employee overtime and to replace temporary hires was more than sufficient to show that other interns "may be 'similarly situated' to [them] with respect to whether a FLSA violation has occurred." *Id*. Moreover, the "individual aspects of the intern's experience" – to the extent there are any – cannot be assessed until the second stage when it will be possible to determine "whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs." *Id*.

Even at the second stage, evidence of a corporate-wide policy to replace paid workers with interns may well be sufficient to justify maintaining a collective through trial. Under the panel's primary beneficiary test, this evidence is capable of answering a key merits question – did the employer benefit. *See Glatt*, 791 F.3d at 383-85. To the extent that there are any "individual aspects of the intern's experience" that warrant consideration, the existence of some individual issues does not preclude certification even under Rule 23's higher predominance standard. *See Amgen v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1196

(2013) ("Rule 23(b)(3) . . . does *not* require a plaintiff . . . to prove that each element of her claim is susceptible to classwide proof.") (internal quotation marks and brackets omitted); *see also Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1262-63 (11th Cir. 2008) (denying motion to decertify collective where the plaintiffs' evidence showed that collective members were similar with respect to several features of their position and where the company exempted all collective members from overtime regardless of the purported differences among them); *cf. McReynolds v. Merrill Lynch et al.,* 672 F.3d 482, 490-91 (7th Cir. 2012) (reversing denial of class certification where it was more efficient to evaluate the challenged policies on a class-wide basis rather than in 700 individual lawsuits and where, despite that it might be necessary for the court to hold separate trials to determine which class members were actually adversely affected by the policies and if so what loss each class member sustained, "at least it wouldn't be necessary in each of those trials to determine whether the challenged practices were unlawful").

Moreover, requiring each intern to separately litigate her claim, despite participating in the same internship program, run by the same employer, subject to the same decision to classify her as a non-employee, would be wasteful and contrary to the FLSA's policy objectives of reducing cost and increasing efficiency. *See Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989)

("Congress has stated its policy that [plaintiffs] should have the opportunity to proceed collectively. A collective action allows [plaintiffs] the advantage of lower individual costs to vindicate rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged . . . activity.").

It also "overlooks the reality that without certification, putative [collective] members with valid claims would not recover anything at all." *Mullins v. Direct Digital, LLC*, --- F.3d ----, 2015 WL 4546159, at *10 (7th Cir. 2015); *Suchanek v. Sturm Foods, Inc*., 764 F.3d 750, 760 (7th Cir. 2014) ("A class action has to be unwieldy indeed before it can be pronounced an inferior alternative . . . to no litigation at all.") (internal citation and quotation marks omitted).

Here, as discussed above, the panel should have left it to the district court to assess the record in the first instance, and given the parties an opportunity to evaluate their claims in light of the new legal standard and any new discovery that the district court allows.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court grant

their petition for rehearing or rehearing *en banc*.

Dated:       August 14, 2015
             New York, New York

                   Respectfully submitted,

                   */s/ Rachel Bien*

                   Rachel Bien
                   Adam T. Klein
                   Juno Turner
                   Outten & Golden LLP
                   3 Park Avenue, 29th Floor
                   New York, New York 10016
                   Telephone:  212-245-1000

13-4478-cv (L)
*Glatt et al. v. Fox Searchlight Pictures, Inc. et al.*

# In the

# United States Court of Appeals

## For the Second Circuit

————

AUGUST TERM, 2014

ARGUED: JANUARY 30, 2015
DECIDED: JULY 2, 2015

Nos. 13-4478-cv, 13-4481-cv

ERIC GLATT, ALEXANDER FOOTMAN, EDEN M. ANTALIK, ON BEHALF OF
HERSELF AND ALL OTHERS SIMILARLY SITUATED,
*Plaintiffs-Appellees,*

*v.*

FOX SEARCHLIGHT PICTURES, INC., FOX ENTERTAINMENT GROUP, INC.,
*Defendants-Appellants.*[*]

————

Appeal from the United States District Court for the Southern District of
New York.
No. 1:11-CV-6784 – William H. Pauley III, *Judge.*

————

Before: WALKER, JACOBS, and WESLEY, *Circuit Judges.*

————

---

[*] The clerk of the court is directed to amend the caption as set forth above.

Plaintiffs, who were hired as unpaid interns, claim compensation as employees under the Fair Labor Standards Act and New York Labor Law. Plaintiffs Eric Glatt and Alexander Footman moved for partial summary judgment on their employment status. Plaintiff Eden Antalik moved to certify a class of all New York interns working at certain of defendants' divisions between 2005 and 2010 and to conditionally certify a nationwide collective of all interns working at those same divisions between 2008 and 2010. The district court (William H. Pauley III, *J.*) granted Glatt and Footman's motion for partial summary judgment, certified Antalik's New York class, and conditionally certified Antalik's nationwide collective. On defendants' interlocutory appeal, we VACATE the district court's order granting partial summary judgment to Glatt and Footman, VACATE its order certifying Antalik's New York class, VACATE its order conditionally certifying Antalik's nationwide collective, and REMAND for further proceedings.

———

NEAL KUMAR KATYAL, Hogan Lovells US LLP, Washington, DC, (Mary Helen Wimberly, Frederick Liu, Hogan Lovells US LLP, Washington, DC, and Elise M. Bloom, Mark D. Harris, Chantel L. Febus, Amy F. Melican, Joshua S. Fox, Proskauer Rose LLP, New York, NY, *on the brief*), *for Defendants-Appellants*.

RACHEL BIEN, Outten & Golden LLP, New York, NY, (Adam T. Klein, Juno Turner, Outten & Golden LLP, New York, NY, *on the brief*), *for Plaintiffs-Appellees*.

MARIA VAN-BUREN, U.S. Department of Labor, Washington, DC, (Jennifer S. Brand, Paul L. Frieden, *on the brief*), for M. Patricia Smith, Solicitor of Labor, U.S. Department of Labor, Washington, DC, *as Amicus Curiae.*

————

JOHN M. WALKER, JR., *Circuit Judge*:

Plaintiffs, who were hired as unpaid interns, claim compensation as employees under the Fair Labor Standards Act and New York Labor Law. Plaintiffs Eric Glatt and Alexander Footman moved for partial summary judgment on their employment status. Plaintiff Eden Antalik moved to certify a class of all New York interns working at certain of defendants' divisions between 2005 and 2010 and to conditionally certify a nationwide collective of all interns working at those same divisions between 2008 and 2010. The district court (William H. Pauley III, *J.*) granted Glatt and Footman's motion for partial summary judgment, certified Antalik's New York class, and conditionally certified Antalik's nationwide collective. On defendants' interlocutory appeal, we VACATE the district court's order granting partial summary judgment to Glatt and Footman, VACATE its order certifying Antalik's New York class, VACATE its order conditionally certifying Antalik's nationwide collective, and REMAND for further proceedings.

## BACKGROUND

Plaintiffs worked as unpaid interns either on the Fox Searchlight-distributed film *Black Swan* or at the Fox corporate offices in New York City. They contend that the defendants, Fox Searchlight and Fox Entertainment Group, violated the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 206-07, and New York Labor (NYLL), N.Y. Labor Law § 652, by failing to pay them as employees during their internships as required by the FLSA's and NYLL's minimum wage and overtime provisions. The following background facts are undisputed except where noted.

Eric Glatt

Eric Glatt graduated with a degree in multimedia instructional design from New York University. Glatt was enrolled in a non-matriculated (non-degree) graduate program at NYU's School of Education when he started working on *Black Swan*. His graduate program did not offer him credit for his internship.

From December 2, 2009, through the end of February 2010, Glatt interned in *Black Swan's* accounting department under the supervision of Production Accountant Theodore Au. He worked from approximately 9:00 a.m. to 7:00 p.m. five days a week. As an accounting intern, Glatt's responsibilities included copying, scanning, and filing documents; tracking purchase orders; transporting paperwork and items to and from the *Black Swan* set; maintaining employee personnel files; and answering questions about the accounting department.

Glatt interned a second time in *Black Swan's* post-production department from March 2010 to August 2010, under the supervision of Post Production Supervisor Jeff Robinson. Glatt worked two days a week from approximately 11:00 a.m. until 6:00 or 7:00 p.m. His post-production responsibilities included drafting cover letters for mailings; organizing filing cabinets; filing paperwork; making photocopies; keeping the take-out menus up-to-date and organized; bringing documents to the payroll company; and running errands, one of which required him to purchase a non-allergenic pillow for Director Darren Aronofsky.

<u>Alexander Footman</u>

Alexander Footman graduated from Wesleyan University with a degree in film studies. He was not enrolled in a degree program at the time of his *Black Swan* internship. From September 29, 2009, through late February or early March 2010, Footman interned in the production department under the supervision of Production Office Coordinator Lindsay Feldman and Assistant Production Office Coordinator Jodi Arneson. Footman worked approximately ten-hour days. At first, Footman worked five days a week, but, beginning in November 2009, he worked only three days a week. After this schedule change, *Black Swan* replaced Footman with another unpaid intern in the production department.

Footman's responsibilities included picking up and setting up office furniture; arranging lodging for cast and crew; taking out the trash; taking lunch orders; answering phone calls; watermarking scripts; drafting daily

call sheets; photocopying; making coffee; making deliveries to and from the film production set, rental houses, and the payroll office; accepting deliveries; admitting guests to the office; compiling lists of local vendors; breaking down, removing, and selling office furniture and supplies at the end of production; internet research; sending invitations to the wrap party; and other similar tasks and errands, including bringing tea to Aronofsky and dropping off a DVD of *Black Swan* footage at Aronofsky's apartment.

Eden Antalik

Eden Antalik worked as an unpaid publicity intern in Fox Searchlight's corporate office in New York from the beginning of May 2009 until the second week of August 2009. During her internship, Antalik was enrolled in a degree program at Duquesne University that required her to have an internship in order to graduate. Antalik was supposed to receive credit for her internship at Fox Searchlight, but, for reasons that are unclear from the record, she never actually received the credit.

Antalik began work each morning around 8:00 a.m. by assembling a brief, referred to as "the breaks," summarizing mentions of various Fox Searchlight films in the media. She also made travel arrangements, organized catering, shipped documents, and set up rooms for press events.

Prior Proceedings

On October 19, 2012, plaintiffs filed their first amended class complaint seeking unpaid minimum wages and overtime for themselves and all others similarly situated. Thereafter, Glatt and Footman abandoned

their class claims and proceeded as individuals. After discovery, Glatt and Footman moved for partial summary judgment, contending that they were employees under the FLSA and NYLL. The defendants cross-moved for summary judgment claiming that Glatt and Footman were not employees under either statute. At about the same time, Antalik moved to certify a class of New York State interns working at certain Fox divisions and a nationwide FLSA collective of interns working at those same divisions.

On June 11, 2013, the district court concluded that Glatt and Footman had been improperly classified as unpaid interns rather than employees and granted their partial motion for summary judgment. The district court also granted Antalik's motions to certify the class of New York interns and to conditionally certify the nationwide FLSA collective.

On September 17, 2013, the district court, acting on defendants' motion, certified its order for immediate appeal under 28 U.S.C. § 1292(b). On November 26, 2013, we granted defendants' petition for leave to file an interlocutory appeal from the district court's orders. For the reasons that follow, we vacate the district court's orders and remand.

## DISCUSSION

At its core, this interlocutory appeal raises the broad question of under what circumstances an unpaid intern must be deemed an "employee" under the FLSA and therefore compensated for his work. That broad question underlies our answers to the three specific questions on appeal. First, did the district court apply the correct standard in evaluating

whether Glatt and Footman were employees, and, if so, did it reach the correct result? Second, did the district court err by certifying Antalik's class of New York interns? Third, did the district court err by conditionally certifying Antalik's nationwide collective?

## I.      Glatt's and Footman's Employment Status

We review the district court's order granting partial summary judgment to Glatt and Footman de novo. *See Velez v. Sanchez*, 693 F.3d 308, 313-14 (2d Cir. 2012). Summary judgment is appropriate only if, drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.* at 314.

With certain exceptions not relevant here, the FLSA requires employers to pay all employees a specified minimum wage, and overtime of time and one-half for hours worked in excess of forty hours per week. 29 U.S.C. §§ 206-07. NYLL requires the same, except that it specifies a higher wage rate than the federal minimum. *See* N.Y. Labor Law § 652. An employee cannot waive his right to the minimum wage and overtime pay because waiver "would nullify the purposes of the [FLSA] and thwart the legislative policies it was designed to effectuate." *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981) (internal quotation marks omitted); *see also Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 302 (1985) (exceptions to coverage under the FLSA affect more people than

those workers directly at issue because exceptions are "likely to exert a general downward pressure on wages in competing businesses").

The strictures of both the FLSA and NYLL apply only to employees. The FLSA unhelpfully defines "employee" as an "individual employed by an employer." 29 U.S.C. § 203(e)(1). "Employ" is defined as "to suffer or permit to work." *Id.* § 203(g). New York likewise defines "employee" as "any individual employed, suffered or permitted to work by an employer." 12 N.Y.C.R.R. § 142-2.14(a). Because the statutes define "employee" in nearly identical terms, we construe the NYLL definition as the same in substance as the definition in the FLSA. *See Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 78 (2d Cir. 2003).

The Supreme Court has yet to address the difference between unpaid interns and paid employees under the FLSA. In 1947, however, the Court recognized that unpaid railroad brakemen trainees should not be treated as employees, and thus that they were beyond the reach of the FLSA's minimum wage provision. *See Walling v. Portland Terminal Co.*, 330 U.S. 148 (1947). The Court adduced several facts. First, the brakemen-trainees at issue did not displace any regular employees, and their work did not expedite the employer's business. *Id.* at 149-50. Second, the brakemen-trainees did not expect to receive any compensation and would not necessarily be hired upon successful completion of the course. *See id.* at 150. Third, the training course was similar to one offered by a vocational

school. *Id.* at 152. Finally, the employer received no immediate advantage from the work done by the trainees. *Id.* at 153.

In 1967, the Department of Labor ("DOL") issued informal guidance on trainees as part of its Field Operations Handbook. The guidance enumerated six criteria and stated that the trainee is not an employee only if all of the criteria were met. *See* DOL, Wage & Hour Div., Field Operations Handbook, Ch. 10, ¶ 10b11 (Oct. 20, 1993), *available at* http://www.dol.gov/whd/FOH/FOH_Ch10.pdf. In 2010, the DOL published similar guidance for unpaid interns working in the for-profit private sector. This Intern Fact Sheet provides that an employment relationship does not exist if all of the following factors apply:

1. The internship, even though it includes actual operation of the facilities of the employer, is similar to training which would be given in an educational environment;

2. The internship experience is for the benefit of the intern;

3. The intern does not displace regular employees, but works under close supervision of existing staff;

4. The employer that provides the training derives no immediate advantage from the activities of the intern; and on occasion its operations may actually be impeded;

5. The intern is not necessarily entitled to a job at the conclusion of the internship; and

6. The employer and the intern understand that the intern is not entitled to wages for the time spent in the internship.

DOL, Wage & Hour Div., Fact Sheet #71, Internship Programs Under The Fair Labor Standards Act (April 2010), *available at* http://www.dol.gov/whd/regs/compliance/whdfs71.pdf.

The district court evaluated Glatt's and Footman's employment using a version of the DOL's six-factor test. However, the district court, unlike the DOL, did not explicitly require that all six factors be present to establish that the intern is not an employee and instead balanced the factors. The district court found that the first four factors weighed in favor of finding that Glatt and Footman were employees and the last two factors favored finding them to be trainees. As a result, the district court concluded that Glatt and Footman had been improperly classified as unpaid interns and granted their motion for partial summary judgment.

The specific issue we face—when is an unpaid intern entitled to compensation as an employee under the FLSA?—is a matter of first impression in this Circuit. When properly designed, unpaid internship programs can greatly benefit interns. For this reason, internships are widely supported by educators and by employers looking to hire well-trained recent graduates.[1] However, employers can also exploit unpaid interns by using their free labor without providing them with an appreciable benefit in education or experience. Recognizing this concern, all parties agree that there are circumstances in which someone who is labeled an unpaid intern is actually an employee entitled to compensation under the FLSA. All parties also agree that there are circumstances in

---

[1] *See*, *e.g.*, Nat'l Ass'n of Colleges & Emp'rs, Position Statement: U.S. Internships (July 2011), *available at* http://www.naceweb.org /advocacy/position-statements/united-states-internships.aspx ("NACE, Position Statement").

which unpaid interns are not employees under the FLSA. They do not agree on what those circumstances are or what standard we should use to identify them.

The plaintiffs urge us to adopt a test whereby interns will be considered employees whenever the employer receives an immediate advantage from the interns' work. Plaintiffs argue that focusing on any immediate advantage that accrues to the employer is appropriate because, in their view, the Supreme Court in *Portland Terminal* rested its holding on the finding that the brakemen trainees provided no immediate advantage to the employer.

The defendants urge us to adopt a more nuanced primary beneficiary test. Under this standard, an employment relationship is created when the tangible and intangible benefits provided to the intern are greater than the intern's contribution to the employer's operation. They argue that the primary beneficiary test best reflects the economic realities of the relationship between intern and employer. They further contend that a primary beneficiary test that considers the totality of the circumstances is in accordance with how we decide whether individuals are employees in other circumstances.

DOL, appearing as amicus curiae in support of the plaintiffs, defends the six factors enumerated in its Intern Fact Sheet and its requirement that every factor be present before the employer can escape its obligation to pay the worker. DOL argues (1) that its views on employee

status are entitled to deference because it is the agency charged with administering the FLSA and (2) that we should use the six factors because they come directly from *Portland Terminal*.

We decline DOL's invitation to defer to the test laid out in the Intern Fact Sheet. As DOL makes clear in its brief, its six-part test is essentially a distillation of the facts discussed in *Portland Terminal*. DOL Br. at 11-12, 21. Unlike an agency's interpretation of ambiguous statutory terms or its own regulations, "an agency has no special competence or role in interpreting a judicial decision." *State of N.Y. v. Shalala*, 119 F.3d 175, 180 (2d Cir. 1997). And as DOL concedes, DOL Br. at 21, this interpretation is entitled, at most, to *Skidmore* deference to the extent we find it persuasive. *See Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944) (the weight given to the Administrator's judgment depends on "all those factors which give it power to persuade"). Because the DOL test attempts to fit *Portland Terminal's* particular facts to all workplaces, and because the test is too rigid for our precedent to withstand, *see, e.g.*, *Velez*, 693 F.3d at 326, we do not find it persuasive, and we will not defer to it.

Instead, we agree with defendants that the proper question is whether the intern or the employer is the primary beneficiary of the relationship. The primary beneficiary test has two salient features. First, it focuses on what the intern receives in exchange for his work. *See Portland Terminal*, 330 U.S. at 152 (focusing on the trainee's interests). Second, it also accords courts the flexibility to examine the economic reality as it exists

between the intern and the employer. *See Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 141-42 (2d Cir. 2008) (employment for FLSA purposes is "a flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances").

Although the flexibility of the primary beneficiary test is primarily a virtue, this virtue is not unalloyed. The defendants' conception of the primary beneficiary test requires courts to weigh a diverse set of benefits to the intern against an equally diverse set of benefits received by the employer without specifying the relevance of particular facts. *Cf. Brown v. N.Y.C. Dep't of Educ.*, 755 F.3d 154, 163 (2d Cir. 2014) ("While our ultimate determination [of employment status] is based on the totality of circumstances, our discussion necessarily focuses on discrete facts relevant to particular statutory and regulatory criteria." (internal citation omitted)).

In somewhat analogous contexts, we have articulated a set of non-exhaustive factors to aid courts in determining whether a worker is an employee for purposes of the FLSA. *See, e.g., Velez*, 693 F.3d at 330 (domestic workers); *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1058-59 (2d Cir. 1988) (independent contractors). In the context of unpaid internships,[2] we think a non-exhaustive set of considerations should include:

> 1.      The extent to which the intern and the employer clearly understand that there is no expectation of compensation. Any

---

[2] Like the parties and amici, we limit our discussion to internships at for-profit employers.

promise of compensation, express or implied, suggests that the intern is an employee—and vice versa.

2.     The extent to which the internship provides training that would be similar to that which would be given in an educational environment, including the clinical and other hands-on training provided by educational institutions.

3.     The extent to which the internship is tied to the intern's formal education program by integrated coursework or the receipt of academic credit.

4.     The extent to which the internship accommodates the intern's academic commitments by corresponding to the academic calendar.

5.     The extent to which the internship's duration is limited to the period in which the internship provides the intern with beneficial learning.

6.     The extent to which the intern's work complements, rather than displaces, the work of paid employees while providing significant educational benefits to the intern.

7.     The extent to which the intern and the employer understand that the internship is conducted without entitlement to a paid job at the conclusion of the internship.

Applying these considerations requires weighing and balancing all of the circumstances. No one factor is dispositive and every factor need not point in the same direction for the court to conclude that the intern is not an employee entitled to the minimum wage. In addition, the factors we specify are non-exhaustive—courts may consider relevant evidence beyond the specified factors in appropriate cases.

This flexible approach is faithful to *Portland Terminal*. Nothing in the Supreme Court's decision suggests that any particular fact was essential to its conclusion or that the facts on which it relied would have the same relevance in every workplace. *See Portland Terminal*, 330 U.S. at 150-53; *see*

*also Solis v. Laurelbrook Sanitarium & Sch., Inc.*, 642 F.3d 518, 526 n.2 (6th Cir. 2011) ("While the Court's recitation of the facts [in *Portland Terminal*] included those that resemble the Secretary's six factors, the Court gave no indication that such facts must be present in future cases to foreclose an employment relationship." (internal citation omitted)).

The approach we adopt also reflects a central feature of the modern internship—the relationship between the internship and the intern's formal education. The purpose of a bona-fide internship is to integrate classroom learning with practical skill development in a real-world setting,[3] and, unlike the brakemen at issue in *Portland Terminal*, all of the plaintiffs were enrolled in or had recently completed a formal course of post-secondary education. By focusing on the educational aspects of the internship, our approach better reflects the role of internships in today's economy than the DOL factors, which were derived from a 68-year old Supreme Court decision that dealt with a single training course offered to prospective railroad brakemen.

In sum, we agree with the defendants that the proper question is whether the intern or the employer is the primary beneficiary of the relationship, and we propose the above list of non-exhaustive factors to aid courts in answering that question. The district court limited its review to

---

[3] *See, e.g.*, NACE, Position Statement (defining the internship as "form of experiential learning that integrates knowledge and theory learned in the classroom with practical application and skills development in a professional setting").

the six factors in DOL's Intern Fact Sheet. Therefore, we vacate the district court's order granting partial summary judgment to Glatt and Footman and remand for further proceedings. On remand, the district court may, in its discretion, permit the parties to submit additional evidence relevant to the plaintiffs' employment status, such as evidence on Glatt's and Footman's formal education. Of course, we express no opinion with respect to the outcome of any renewed motions for summary judgment the parties might make based on the primary beneficiary test we have set forth.

## II.     Antalik's Motion to Certify the New York Class

We turn now to the defendants' appeal of the district court's order certifying Antalik's proposed class. We review the district court's class certification ruling for abuse of discretion and the conclusions of law that informed its decision to grant certification de novo. *See Parker v. Time Warner Entm't Co.*, 331 F.3d 13, 18 (2d Cir. 2003).

Antalik moved to certify the following class:

All individuals who had unpaid internships between September 28, 2005 and September 1, 2010 with one or more of the following divisions of FEG [Fox Entertainment Group]: Fox Filmed Entertainment, Fox Group, Fox Networks Group, and Fox Interactive Media (renamed News Corp. Digital Media).

Pls.' Mot. For Class Cert. 19, Doc. No. 104.

Antalik bore the burden of showing that her proposed class satisfied Rule 23's requirements of: (1) numerosity; (2) commonality; (3) typicality;

and (4) adequacy of representation. *See* Fed. R. Civ. P. 23(a)(1-4). Because Antalik moved to certify the class pursuant to Rule 23(b)(3), she was also required to show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *See* Fed R. Civ. P. 23(b)(3). "The predominance requirement is satisfied if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 118 (2d Cir. 2013) (internal quotation marks omitted).

The district court found that common questions pertaining to liability could be answered by evidence tending to show that interns were recruited to help with busy periods, that they displaced paid employees, and that Fox employees overseeing internships did not believe they complied with the law. Because "common questions of liability predominate over individual calculations of damages," the district court concluded that Antalik had satisfied her burden to establish predominance. S.A. 33-34.

On appeal, the defendants argue the district court erred by concluding that Antalik demonstrated predominance because it misconstrued our standards for determining when common questions

predominate over individual ones. We agree and therefore vacate the district court's order certifying Antalik's class.[4]

Antalik points to evidence, relied on by the district court, suggesting that the defendants sometimes used unpaid interns in place of paid employees. Such evidence is relevant but not sufficient to answer the question of whether each intern was an employee entitled to compensation under the FLSA. As our previous discussion of the proper test indicates, the question of an intern's employment status is a highly individualized inquiry. Antalik's common evidence will not help to answer whether a given internship was tied to an education program, whether and what type of training the intern received, whether the intern continued to work beyond the primary period of learning, or the many other questions that are relevant to each class member's case. Moreover, defendants' undisputed evidence demonstrated that the various internship programs it offered differed substantially across the many departments and four Fox divisions included in the proposed class.

In sum, even if Antalik established that Fox had a policy of replacing paid employees with unpaid interns, it would not necessarily mean that every Fox intern was likely to prevail on her claim that she was an FLSA employee under the primary beneficiary test, the most important issue in

---

[4] In light of this disposition, we need not consider defendants' arguments related to commonality. *See Myers v. Hertz Corp.*, 624 F.3d 537, 548 (2d Cir. 2010).

each case. Thus, assuming some questions may be answered with generalized proof, they are not more substantial than the questions requiring individualized proof. *See, e.g.*, *Myers v. Hertz Corp.*, 624 F.3d 537, 548 (2d Cir. 2010) (district court did not abuse its discretion by denying certification of a class of store managers where determination of whether managers were exempt under the FLSA would be resolved only "by examining the employees' actual job characteristics and duties"); *In re Wells Fargo Home Mortgage Overtime Pay Litig.*, 571 F.3d 953, 958-59 (9th Cir. 2009) (district court abused its discretion by certifying a class of mortgage consultants because employer's centralized policy of exempting consultants did not predominate over individual variation in job responsibilities).

Because the most important question in this litigation cannot be answered with generalized proof, we vacate the district court's order certifying Antalik's proposed class and remand for further proceedings consistent with this opinion.[5]

### III.   Antalik's Motion to Conditionally Certify the Nationwide FLSA Collective

Finally, we turn to the defendants' appeal of the district court's order conditionally certifying Antalik's proposed nationwide FLSA

---

[5] Nevertheless, although the district court's certification order was erroneous in light of the new legal standard we have announced today, we cannot foreclose the possibility that a renewed motion for class certification might succeed on remand under our revised standard.

collective. Like the district court's certification determination pursuant to Rule 23, we review its decision to conditionally certify an FLSA collective for abuse of discretion. *See Myers*, 624 F.3d at 554; *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1260 (11th Cir. 2008).

The FLSA permits employees to create a collective by opting-in to a backpay claim brought by a similarly situated employee. 29 U.S.C. § 216(b). The unique FLSA collective differs from a Rule 23 class because plaintiffs become members of the collective only after they affirmatively consent to join it. *See Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1530 (2013). As a result, unlike a Rule 23 class, a conditionally certified FLSA collective does not acquire an independent legal status. *Id.*

In *Myers*, we endorsed a two-step process for certifying FLSA collective actions. At step one, the district court permits a notice to be sent to potential opt-in plaintiffs if the named plaintiffs make a modest factual showing that they and others together were victims of a common policy or plan that violated the law. 624 F.2d at 555. At step two, with the benefit of additional factual development, the district court determines whether the collective action may go forward by determining whether the opt-in plaintiffs are in fact similarly situated to the named plaintiffs. *Id.*

Antalik moved, at step one, to conditionally certify the following nationwide collective:

> All individuals who had unpaid internships between September 28, 2008 and September 1, 2010 with one or more of the following divisions of FEG: Fox Filmed Entertainment,

Case 13-4478, Document 201, 07/02/2015, 1547542, Page52 of 63

Fox Group, Fox Networks Group, and Fox Interactive Media
(renamed News Corp. Digital Media).

Pls.' Mot. For Class Cert. 28, Doc. No. 104.

After some discovery had been completed, the district court, relying
primarily on its analysis of commonality with respect to Antalik's Rule 23
motion, authorized plaintiffs to send the opt-in notice because Antalik put
forth generalized proof that interns were victims of a common policy to
replace paid workers with unpaid interns. On defendants' motion for
reconsideration, the district court narrowed the opt-in notice to include
only those individuals who held unpaid internships between January 18,
2010, and September 1, 2010, because the statute of limitations precluded
claims by earlier Fox interns.

We certified for immediate review the question of whether a higher
standard, urged by defendants, applies to motions to conditionally certify
an FLSA collective made after discovery. We do not need to decide that
question, however, because the plaintiffs in Antalik's proposed collective
are not similarly situated even under the minimal pre-discovery standard.[6]
Under the primary beneficiary test we have set forth, courts must consider
individual aspects of the intern's experience. None of the common proof
identified by Antalik, and relied on by the district court, will address these

---

[6] "We are not necessarily limited to the certified issue, as we have the
discretion to consider any aspect of the order from which the appeal is taken."
*J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 115 (2d Cir. 2004); *accord Grayson
v. K Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996) (same applied to order
conditionally certifying a collective).

questions, and all of the issues with respect to the proposed class's range of experience will also be issues for the proposed collective. If anything, Antalik's proposed collective presents an even wider range of experience than her proposed class because it is nationwide in scope, rather than limited to just New York interns.

Accordingly, for substantially the same reasons as with respect to Antalik's Rule 23 motion, we vacate the district court's order conditionally certifying Antalik's proposed nationwide collective action and remand for further proceedings.[7]

## CONCLUSION

For the foregoing reasons, the district court's orders are VACATED and the case REMANDED for further proceedings consistent with this opinion.

---

[7] Again, we do not foreclose the possibility that a renewed motion for conditional collective certification might succeed on remand under the revised standard. *See supra* n.5.

13-4480-cv
*Wang v. The Hearst Corp.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.  CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").  A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 2nd day of July, two thousand fifteen.

PRESENT:   JOHN M. WALKER, JR.,
                    DENNIS JACOBS,
                    RICHARD C. WESLEY,
                              *Circuit Judges.*

———————————————————————————

XUEDAN WANG, on behalf of herself and all others
similarly situated, ELIZABETH MANCINI, MATTHEW
JORDAN WAGSTER, STEPHANIE LAUREN SKORKA,
ERIN E. SPENCER, ALEXANDRA RAPPAPORT, SARAH
WHEELS, CAITLIN LESZUK,

                              *Plaintiffs-Appellants,*

          -v.-                                              No.   13-4480-cv

THE HEARST CORP.
                    *Defendant-Appellee.*\*

———————————————————

\* The clerk of the court is directed to amend the caption as set forth above.

| FOR APPELLANTS: | RACHEL BIEN (Adam T. Klein, Juno Turner, *on the brief*), Outten & Golden LLP, New York, NY. |
|---|---|
| FOR APPELLEE: | JONATHAN R. DONNELLAN (Eve Burton, Kristina E. Findikyan, Courtenay O'Connor, *on the brief*), Hearst Corp., New York, NY. |

Appeal from the United States District Court for the Southern District of New York (Harold Baer, Jr., *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the order of the district court denying summary judgment be and hereby is **VACATED,** the order denying class certification be and hereby is **AFFIRMED,** and the case **REMANDED.**

Plaintiffs brought this interlocutory appeal from the district court's May 8, 2013 order denying their motion for partial summary judgment and denying their motion for class certification. This appeal was argued in tandem with *Glatt v. Fox Searchlight Pictures, Inc.*, No. 13-4478-cv, which we decide today in a full opinion. We assume the parties' familiarity with the underlying facts, procedural history, and specification of issues for review.

## Plaintiffs' Motion for Partial Summary Judgment

Before the district court, plaintiffs, who worked as unpaid interns at various Hearst magazines, moved for partial summary judgment contending that they were "employees" for purposes of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 206-07, and New York Labor Law ("NYLL"), N.Y. Labor Law § 652. The district court denied plaintiffs' motion because it found that material disputes of fact existed with respect to the proper standard to apply and with respect to the first, second, third, and fourth Department of Labor ("DOL") factors enumerated in its Intern Fact Sheet.

We review a district court's denial of summary judgment de novo. *See Velez v. Sanchez*, 693 F.3d 308, 313-14 (2d Cir. 2012). A grant of summary judgment should be affirmed only if, drawing all reasonable inferences in favor of the nonmoving party, there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *Id.*

On appeal, plaintiffs argue that the district court erred by failing to grant their motion for partial summary judgment because interns must be considered employees if they provided an immediate advantage to the employer. In the alternative, they argue that the district court erred by failing to grant partial

summary judgment because Hearst cannot establish four of the six DOL criteria as a matter of law. Both arguments are without merit. As we explained fully in *Glatt*, an unpaid intern is an employee under the FLSA when the employer, rather than the intern, is the primary beneficiary of the parties' relationship. *Glatt v. Fox Searchlight Pictures, Inc.*, No. 13-4478-cv, slip op. at 13 (2d Cir. July 2, 2015). We also announced a non-exhaustive set of factors that courts can use to answer that question. *Id.*, slip op. at 14-15. Accordingly, even assuming that Hearst received an immediate advantage from plaintiffs and could not establish four of the DOL factors, plaintiffs have not shown that they were entitled to judgment as a matter of law on the issue of their employment status.

Although the district court applied a totality of the circumstances test, it understandably did not consider all of the factors we proposed in *Glatt*. The district court should determine in the first instance, in light of *Glatt*, whether plaintiffs established that they were FLSA employees as a matter of law. Accordingly, we vacate the district court's order denying the plaintiffs' motion for partial summary judgment and remand for further proceedings consistent with our opinion in *Glatt*.[1] As in *Glatt*, the district court may, in its discretion,

---

[1] During the pendency of this appeal, the case was reassigned to Judge J. Paul Oetken because of the death of Judge Baer.

permit the parties to introduce new evidence. We express no opinion with respect to the outcome of any renewed motions for summary judgment under the standard we set forth in *Glatt*.

## Plaintiffs' Motion for Class Certification

Plaintiffs also moved to certify the following class pursuant to Federal Rule of Civil Procedure 23(b)(3): "All persons who have worked as unpaid interns at Hearst Magazines in New York between February 1, 2006 and the date of final judgment in this matter." S.A. 7. The district court determined that plaintiffs established Rule 23(a)'s requirements of numerosity, typicality, and adequacy, but failed to establish commonality under Rule 23(a) or predominance under Rule 23(b)(3). Accordingly, the district court denied plaintiffs' motion to certify the class.

We review the district court's class certification ruling for abuse of discretion and the conclusions of law that informed its decision to deny certification de novo. *See Parker v. Time Warner Entm't Co., L.P.*, 331 F.3d 13, 18 (2d Cir. 2003).

The district court found that there was no uniform policy with respect to the contents of the internships, including interns' duties, training, and

supervision, such that the analysis would have to be individualized. As a result, the district court concluded that common questions do not predominate over individual ones.

On appeal, the plaintiffs contend that Hearst's common practices will be decisive of the merits and that representative testimony can be used to establish those common practices. These arguments are unpersuasive. As we have framed the relevant inquiry, courts must analyze how the internship was tied to the intern's formal education, the extent of the intern's training, and whether the intern continued to work beyond the period of beneficial learning. *See Glatt*, No. 13-4478-cv, slip op. at 19. Irrespective of the type of evidence used to answer them, these questions are individual in nature and will require individual analysis. *See id.* Moreover, the district court correctly recognized that interns' experiences varied across the numerous departments at each of the 19 magazines Hearst operates in New York. Therefore, because of variation in the proposed class and the need for individual analysis of each intern's situation, common questions do not predominate over individual ones.

In sum, the district court's conclusions are in accord with our holding in *Glatt* that the question of an intern's employment status is a "highly

individualized inquiry." *See Glatt*, No. 13-4478-cv, slip op. at 19. Therefore, the district court did not abuse its discretion by denying plaintiffs' motion to certify the proposed class. *See Myers v. Hertz Corp.*, 624 F.3d 537, 548 (2d Cir. 2010) (district court did not abuse its discretion by denying certification of class of store managers where determination of whether managers were exempt under the FLSA would be resolved "by examining the employees' actual job characteristics and duties"). Accordingly, for substantially the same reasons that we vacated the district court's order granting the plaintiffs' motion to certify the proposed class in *Glatt*, we affirm the district court's order denying plaintiffs' motion for class certification.[2]

We have considered the remainder of the plaintiffs' arguments and find them to be without merit. Accordingly, the order of the district court denying summary judgment hereby is VACATED, the order of the district court denying class certification hereby is AFFIRMED, and the case is REMANDED for further

---

[2] Although we find that the district court's certification order accords with the new legal standard we announced in *Glatt*, we cannot foreclose the possibility that a renewed motion for class certification might succeed on remand under our revised standard. *See Glatt*, No. 13-4478-cv, slip op. at 20 n.5.

proceedings consistent with our opinion in *Glatt v. Fox Searchlight Pictures, Inc.*, No. 13-4478-cv (2d Cir. July 2, 2015), and this order.

 

             FOR THE COURT:
             Catherine O'Hagan Wolfe, Clerk